THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHESTER COLES, Appellant.

First Department, June 26, 1975

*Morton Brauer* for appellant.

*Judith K. Rubinstein* of counsel *(T. James Bryan* with her on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

MURPHY, J. Defendant was indicted for possession of a weapon as a felony and criminal possession of stolen property in the second degree. The latter count was dismissed on motion of the People. After denial of his motion to suppress the gun, defendant pleaded guilty to the first count and was sentenced to an indeterminate term of imprisonment not to exceed three years. On appeal defendant argues that the suppression motion was improperly denied. For the reasons hereinafter stated, we agree with such contention.

At or about 11:00 A.M. on March 28, 1973, three police officers, in civilian clothes, cruising in an unmarked car, observed appellant "walking very, very slowly" on Broadway. He was kept under surveillance for the next 15 minutes, during which time he allegedly looked into several store windows, repeatedly stopped and looked over his shoulder and, on one occasion, "walk[ed]' by a store, and then walk[ed] back a half a block and look[ed] into the store a second time." The officers then saw defendant enter a hotel on West 75th Street. They followed and spoke to the manager who could not recall any resident of the hotel matching defendant's description.

A maintenance man, however, directed the officers and the manager to the second floor, where he had seen a person who fit that description. At that location, defendant was observed exiting from a "common bathroom". In response to the District Attorney's question, "What happened then?", the officer stated:

"As we entered there was a small corridor running off the main hallway in this hotel where this bathroom is located down there, and as we started to pass it, we observed the defendant exiting this common bathroom. I identified ourselves and I asked him what he was doing in the hotel, and he

said that he was a resident of room 208 which was the room exactly next to this common bathroom. The manager of the hotel said that he was not a resident of the room. The room was rented to a female only. At this time we approached the defendant, and patted him down, and found a loaded twenty five caliber automatic in a holster on the right side of his belt."

On cross-examination the officer added the additional fact that, on initial inquiry, appellant "attempted to reenter the bathroom" or "made a motion like he was going to start into the bathroom." In any event, it is clear that defendant was frisked thereafter; and only when the hotel manager contradicted appellant's assertion that he was a resident of the hotel. The following day the hotel manager confirmed appellant's claim that he was living with the woman who had rented Room 208.

Concededly, the reasonableness of the officer's conduct must be determined by the facts available to him at the time of the stop-and-frisk and cannot be affected by subsequent events. *(People v Moore,* 32 NY2d 67.) Nevertheless, on the instant record and giving full credence to the arresting officer's testimony, we find an insufficient basis for the seizure and search.

At the moment of confrontation appellant had committed no overt criminal act; nor could the officer have reasonably suspected that defendant was committing, had committed or was about to commit either a felony or a Class A misdemeanor. (CPL 140.50, subd 1.) Moreover, and the suppression court so found, neither officer involved in the arrest reasonably suspected that he was in danger of physical injury. (CPL 140.50, subd 3.)

Defendant was not trespassing since the hotel premises entered were open to the public and defendant defied no lawful order not to enter or remain. (Penal Law, § 140.00, subd 5.) And even if, because of the hotel manager's statement and defendant's allegedly equivocal conduct, the officer had a founded suspicion that criminal activity was afoot, defendant's conduct would, at best, have amounted to trespass (a violation) or criminal trespass in the third degree (a Class B misdemeanor). A reasonable suspicion of the commission of either of such offenses did not authorize a stop-and-frisk. (CPL 140.50.)*

---

* The instant arrest was made on March 28, 1973, prior to the effective date of L 1973, ch 714, deleting "class A" before "misdemeanor" in subdivisions 1 and 2 of CPL 140.50.

Since the initial stop was unlawful, the evidence thereafter obtained must be suppressed. *(People v Cantor,* 36 NY2d 106.)

Accordingly, the judgment of Supreme Court, New York County (ASCIONE, J.), rendered November 27, 1973, should be reversed, on the law, and vacated, the order of said court denying defendant's suppression motion should be reversed, on the law, and granted, and the indictment dismissed.

CAPOZZOLI, J. (dissenting). "The business of the police is to prevent crime if they can. Prompt inquiry into suspicious or unusual street action is an indispensable police power in the orderly government of large urban communities. It is a prime function of city police to be alert to things going wrong in the streets * * *.

"And the evidence needed to make the inquiry is not of the same degree or conclusiveness as that required for an arrest. The stopping of the individual to inquire is not an arrest and the ground upon which the police may make the inquiry may be less incriminating than the ground for an arrest for a crime known to have been committed." *(People v Rivera,* 14 NY2d 441, 444, 445.)

The last-cited case also held that the right to "frisk" is justified as an incident to such questioning upon grounds of safety and precaution which might not, in the first instance, justify a regular search.

In the case at bar it must be emphasized that, when defendant was spotted on the second floor of the hotel by the police and the hotel manager, he asserted that he lived at the hotel. The hotel manager immediately told the police that the defendant's statement was not true and that he did not live in the hotel. It seems to me that the police were then justified in inquiring further, but before doing so they decided to frisk the defendant. Otherwise, as was said in *People v Rivera (supra,* p 446): "The answer to the question propounded by the policeman may be a bullet".

The fact that, on the day after the arrest, the manager may have confirmed appellant's claim that a woman, who had rented the room by herself, and he lived in that room, cannot in any way affect the propriety of the action taken by the police on the previous day.

As was stated in *People v Moore* (32 NY2d 67, 69): "In the final analysis, the test is whether the facts available to the officer at the moment of the seizure would warrant a person of

reasonable caution in believing that the action taken was appropriate. [Citing cases.]".

Accordingly, the propriety of the police action must be measured in the light of the facts as they were known to the police at the time they frisked the defendant.

I am satisfied, after a thorough review of this record, that the behavior of the police, from the time they first observed the defendant and up to his arrest on the second floor of the hotel, was in the highest and best tradition of crime prevention, at the same time doing no violence to defendant's constitutional rights.

For the reasons given, I dissent from the conclusion reached by the majority and vote to affirm.

STEVENS, P. J., and TILZER, J., concur with MURPHY, J.; CAPOZZOLI, J., dissents in an opinion in which KUPFERMAN, J., concurs.

Judgment, Supreme Court, New York County, rendered November 27, 1973, reversed, on the law, and vacated, the order of said court entered on October 2, 1973 denying defendant's suppression motion, reversed, on the law, and granted, and the indictment dismissed.