## (April 9, 1976)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELLIOTT WASHINGTON, Appellant.—Judgment affirmed. Memorandum: Following a motion to suppress the admission in evidence of a .32-caliber loaded revolver taken from the person of defendant by an arresting officer, a hearing was held and the court made its determination, with which we agree, based on the credible evidence, denying suppression. Two uniformed officers in a marked police car observed defendant with five or six other young men standing on the corner of Lemon and High Streets in Buffalo, New York. Officer Ransford, who was driving, recognized him from prior arrests and wanted to talk with him concerning one Stevie Wilson, a witness in a case involving a pending charge against defendant of armed robbery, who had reported that he was in fear of his life following threats made by defendant. The officer pulled the car over to the curb on the wrong side of the street near the group of men and went up to talk to him. Defendant turned and started to walk away. The officer called to him a couple of times to hold it, saying that he wanted to talk to him. Defendant continued walking and the officer noticed both his hands were around his midsection moving up and down. He became suspicious, ran up to him, grabbed him, turned him around and asked him what he was doing. He was pushing something down his pants, and the officer, putting his hand over defendant's hand, could feel what he believed to be the butt of a gun. He told defendant to move his hand aside or he'd get hurt. A slight tussle ensued and the officer retrieved a .32-caliber loaded revolver down defendant's pants. Thereupon the officer placed defendant under arrest for possession of a weapon, and this appeal is from a judgment of conviction entered following defendant's plea of guilty to a reduced charge of attempted possession of a weapon. Statutory authority for the officer's conduct is found in CPL 140.50 (subds 1, 3). As was pointed out in *People v Brown* (32 NY2d 172, 174), "the officer's bare suspicion of criminal activity was sufficient for an investigatory stop". The information conveyed to the officer of defendant's threats against a witness in a pending criminal prosecution, together with his evasive action when confronted by the officer, provided an adequate basis for the officer's stopping and making inquiry of the defendant. Defendant's hand movement after being hailed, together with the officer's prior knowledge and immediate observation of defendant's conduct, afforded grounds for reasonable suspicion of imminent criminality and danger of physical injury, and justified the frisk of his person. In *People v Whetstone* (47 AD2d 995), relied on by the defendant, this court pointed out that there was nothing equivocal or suspicious about

the defendant's conduct nor any evasion of the police or turning away prior to his being hailed. In that case the police had no information or reason to suggest any criminal conduct by defendant when they sought to stop him, knowing only that he had a prior criminal record. Likewise the other cases relied on by defendant are distinguishable on their facts, lacking the elements of a reasonable basis for an investigatory stop, followed by conduct on the part of defendant warranting reasonable suspicion of conduct justifying a frisk, which in turn developed probable cause for an arrest. The sentence by the court to an indeterminate term of imprisonment of not to exceed four years, the court having knowledge that defendant had been released from jail just five days before on the pending larceny charge, was not an abuse of its discretion. All concur except Goldman, J., who dissents and votes to reverse the judgment and dismiss the indictment in the following memorandum: I cannot agree with the majority that the standards of CPL 140.50 were met. My position is succinctly stated in *People v Johnson* (30 NY2d 929, 930): "On the record before us, neither the stop nor the frisk of appellant was justified by reasonable suspicions on the part of the police * * * Absent any articulable foundation for the entrenchment upon individual liberty and privacy which a stop and frisk entails, police suspicions remain merely 'hunches' and are not reasonable". At the suppression hearing the arresting police officer testified that as he and another officer were cruising in a police car at about 7:45 in the evening they observed a group of youths gathered at a corner. He "spotted" the defendant and the officer said that he wanted to talk to him. The officer knew that defendant had been arrested previously, although he had no prior conviction. At this point it should be noted that the officer's version of what transpired is in sharp conflict with the testimony of the defendant and his two companions. Nevertheless, I am basing my dissent on the officer's version of what occurred. He stated that as he approached defendant and told him to stop, "he walked". As defendant was walking the officer saw "both his hands were around his midsection moving up and down", whereupon the officer "became suspicious" and "grabbed him". He then searched the defendant and found a loaded revolver. Defendant was indicted for felonious possession of the weapon and after the court denied his motion to suppress, defendant pleaded guilty to the reduced charge of attempted possession of a weapon. I can find no substantive difference between the instant case and the several recent decisions which have, under markedly similar fact patterns, declared searches under these circumstances illegal. In *People v Brown* (32 NY2d 172, 174) an officer observed the defendant leaving a building carrying a crowbar and an automobile battery, the cables of which were torn. Upon searching the defendant the officer found a quantity of heroin and a hypodermic needle. Judge Jasen, writing for an unanimous court in reversing the conviction, stated: "His behavior, at most equivocal and suspicious, was unsupplemented by any additional behavior or circumstances raising 'the level of inference from suspicion to probable cause'. (See *People v. Corrado,* 22 NY2d 308, 311, 313.)" The majority finds probable cause for the search in that the defendant continued to walk after being hailed by the officer and because of the movement of defendant's hand around his midsection. In *People v Brown* (24 NY2d 421, 423), the officer observed two men together, one walked and the police observed "movement of hand". Notwithstanding that this was in an area where drugs were being sold, the court held that "there was no recurring pattern of conduct sufficient to negate inferences of innocent activity". *People v Russell* (34 NY2d 261) indicates the Court of Appeals condemnation of warrantless

searches. In that case the police received information that defendant was dealing in drugs in an area where drugs were trafficked. The officer observed the defendant make a motion with his hand and arm. The officer stopped defendant, searched the automobile and found an envelope which contained heroin. Writing for a unanimous court, Judge Gabrielli stated (p 264) "Since he was suspected of dealing in narcotics, the observed acts might seem not inconsistent with a culpable narcotics transaction, but they were also susceptible of various innocent activities or transactions". In a markedly similar case the First Department reversed the conviction on the ground that there was no reasonable basis to suspect that the defendant had committed a crime. In *People v Lewis* (49 AD2d 558) the defendant began walking away as a marked police car was cruising in the area. The officer stopped and approached the defendant and "noticed a bulge in his waistband". The search revealed a loaded revolver (as in the instant case). The court found the frisk unlawful and the search illegal. In *Lewis* the stop and search was in a "very high crime area". There is no claim that the place where the instant defendant was searched was such an area. (See, also, *Sibron v New York*, 392 US 40; *Terry v Ohio*, 390 US 1; *People v Derrick*, 48 AD2d 620; *People v Batino*, 48 AD2d 619; *People v Coles*, 48 AD2d 345, 347.) Lastly, the majority's determination is directly inapposite to our decision in *People v Whetstone* (47 AD2d 995). The search in that case occurred at 12:15 A.M. when the officers in the patrol car observed the defendant. One of the officers, incidentally the same officer as in the case at bar, knew the defendant and knew that he had been convicted of crime on prior occasions. As the officer called to the defendant by name, the defendant started walking away, turning from the police, and was observed making movements with his hands. The police found three envelopes containing marijuana on the sidewalk. We found this evidence insufficient to justify stopping and searching defendant. The principle which I find compelling was stated by the Court of Appeals in *People v Green* (35 NY2d 193, 196): "A citizen walking our streets should not, without more, be exposed to physical assault by a police officer on the basis of an unsubstantiated report of the mere possession of firearms volunteered by a stranger". (Appeal from judgment of Supreme Court, Erie County, convicting defendant of attempted possession of a weapon.) Present—Marsh, P. J., Moule, Mahoney, Dillon and Goldman, JJ.