BROADWAY & 67TH ST. CORPORATION, Respondent, v CITY OF NEW YORK et al., Appellants.

First Department, April 10, 1984

**APPEARANCES OF COUNSEL**

*Arnold Stream* of counsel (*Francis F. Caputo* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants.

*Deborah E. Lans* of counsel (*Ira Lichtiger* and *Sandra L. Schpoont* with her on the brief; *Lans Feinberg & Cohen,* attorneys), for respondent.

**OPINION OF THE COURT**

FEIN, J.

Plaintiff landlord has owned premises 121 West 67th Street, Manhattan, a rooming house, since 1945. During the years between 1945 and 1976 no application for rent control was ever made respecting the individual units. The apartments were all subject to a master lease held by an individual who apparently made no periodic efforts to raise the rents. In 1973, when plaintiff terminated the master lease covering the apartments, including apartment 62, the apartment here involved, it began to raise the rent by 7½% per year. After three years, with the rent now at $71.68 per month, the tenant of apartment 62 made an application under subdivision c of section 36 of the New York City Rent and Eviction Regulations for an order fixing the legal maximum rent. Neither the master lessee nor plaintiff had registered with the rent control authorities or filed for admission to the maximum base rent system.

Review and investigation by the Department of Rent and Housing Maintenance revealed an apartment in extremely

run-down condition. The apartment contained no kitchen or cooking facilities such as a sink or a stove. The bathroom contained a tub on legs, an exposed shower and an obsolete high-tank toilet which the tenant testified did not even work for over a month. The room suffered from low water pressure, subsequently found to entitle tenant to a $2 rent abatement per month. The apartment was cold and drafty, forcing the tenant to stuff rags between the window sashes to keep out the cold. The window panes had to be held in place by tape after numerous complaints to plaintiff had gone unheeded. Illumination was by a bare light bulb in a broken fixture pulled away from the wall, which the tenant testified had been reported to the fire department.

The District Rent Director came to the conclusion that the maximum legal rent for this room should be $34.50 for single occupancy, and $40.25 for double occupancy. When plaintiff's protest of this decision was denied by the Rent Commissioner, plaintiff brought a proceeding under CPLR article 78, resulting in an order remitting the matter to the rent agency on consent, to enable plaintiff to present additional evidence respecting building improvements. Submitted for consideration at the new hearing were comparable rooms in the same line of that building, but none from neighboring buildings, inasmuch as plaintiff assertedly could locate no single-room rent-controlled apartments in other buildings in the neighborhood. The Commissioner sustained his prior order, ruling that plaintiff still had shown no improvements to justify a rent increase.

Plaintiff then brought a second article 78 proceeding, this time resulting in an order directing "a formal hearing to resolve the issues of fact and * * * a comparability study to ascertain the rents generally prevailing in the same area for substantially similar housing accomadations [*sic*]" as a prerequisite for fixing the maximum legal rent. The hearing officer this time was advised by the Office of Rent Control representative that there simply were no longer any rooming houses in a similar state of neglect and disrepair in the area, upon which an appropriate comparability study could be based. On the suggestion of the Supervising Inspector of the Office of Rent Control, the hearing officer resorted to review and analyses of hundreds

of rent registrations and histories as a substitute for the comparability study ordered by the court. These records revealed modern dwellings far superior to the apartment in question in every respect, with rents ranging from $51.97 to $82.21 per month. From this, the hearing officer concluded that the maximum rent fixed by the Rent Commissioner was appropriate under these circumstances.

One week after the hearing and before the hearing officer rendered his decision, plaintiff brought a third CPLR article 78 proceeding, premised upon the indication by the hearing officer that he would base his decision upon such independent investigation and analysis rather than upon the formal comparability study directed in the court's prior order. In this third article 78 proceeding, Special Term rendered a decision without affording the Rent Commissioner an opportunity to serve an answer to the petition. Special Term castigated the Commissioner and his hearing officer for disobeying and in effect nullifying the court's prior order directing a comparability study, noting that administrative officials were "not free to 'agree or disagree' with a prior lawful order of this court." Special Term disapproved of the administrative conclusion that a comparability study was impossible. The court concluded that "good faith compliance" with the comparability directive was "quite possible, and the upper West Side neighborhood involved is hardly bereft of similar residential accomodations [sic]." Special Term remanded the proceeding to the department, directing a new hearing before a different hearing officer and again directing a comparability study.

On appeal, we reversed and remanded to Special Term only for the purpose of permitting the Commissioner to interpose an answer to the petition because there were "enough troublesome aspects in the case" so that a decision should be rendered on a full record in accordance with CPLR 7804 (subd [f]) (81 AD2d 788, 789). An answer was thereafter interposed, but as of the time the present appeal was noticed plaintiff had failed to recalendar that third article 78 proceeding.

This action was commenced during the pendency of the above appeal in the third article 78 proceeding. In a single

cause of action, plaintiff apparently sought to allege a prima facie tort asserting defendants had conspired, maliciously and intentionally, to interfere with plaintiff's business and violate its constitutional rights to due process and equal protection. Defendants moved for summary judgment dismissing the complaint. In opposition, plaintiff contended that this was an action for relief under section 1983 of title 42 of the United States Code, as well as for prima facie tort. That statute authorizes a civil action for damages or equitable relief, or both, to redress any deprivation of civil rights perpetrated against an individual under color of State law.

■ Special Term denied defendants' summary judgment motion. It considered the case as pleading two causes of action, one for prima facie tort and the other a civil rights action for damages under section 1983 of title 42 of the United States Code. Special Term also ordered the "City" to comply with the order in the second article 78 proceeding by "conducting a proper comparability study" and holding a hearing and setting "a new maximum rent within sixty days", although such relief had nothing to do with this action. Plainly Special Term had no power to make such an order in this action. Moreover, it could not properly rely upon the alleged violation of the order in the second article 78 proceeding directing a comparability study as the basis for its decision. As Special Term acknowledged, this court in the third article 78 proceeding had reversed a subsequent Special Term order which had remanded the proceeding to the department for the self-same comparability study. We remanded that third proceeding to Special Term to permit defendants to interpose an answer so that the issue of whether a comparability hearing had been held, or was viable or feasible, could be litigated. In the face of this court's action, the alleged violation of Special Term's order in the second article 78 proceeding could provide no basis on which to found a section 1983 action or any other collateral action in the courts of this State. The determination by Special Term that there had been such violation was plainly premature, if not erroneous.

■ Thus, a cause of action for damages for deprivation of civil rights under section 1983 of title 42 of the United

States Code is not stated. Every adverse ruling by a governmental agency may invite a claim of abuse, excess, misuse or distortion of authority. But, obviously, not all such rulings deny due process or give rise to a cause of action under section 1983 (*Creative Environments v Estabrook,* 680 F2d 822, 831, cert den __ US __). There is a manifest difference between an established State procedure lacking due process and an isolated claim arising out of the alleged misconduct of individual State officials. The former may well violate constitutional standards and deny due process, giving rise to a damage action under section 1983. However, where the alleged misconduct is that of an individual State official, it must be so egregious as to rise to constitutional proportions before a valid civil rights claim may arise under section 1983. Otherwise every case involving alleged official misconduct would support a section 1983 civil rights action. Unless the established procedure is itself unconstitutional, no cause of action under section 1983 arises where the State already affords an adequate due process remedy (*Parratt v Taylor,* 451 US 527). Thus, even the refusal by a State agency to comply with a State court order would appear to be an isolated event not of such magnitude as to involve constitutional rights to be redressed in damages under section 1983.

There is no showing that there is a constitutional right to a comparability hearing in connection with establishing a maximum base rent, the issue here involved. This is merely one procedure to be utilized in fixing such rent. (*Bowles v Willingham,* 321 US 503; see *London Terrace v Creedon,* 162 F2d 722, 724-726; *Matter of Axelrod Mgt. Co. v Conciliation & Appeals Bd.,* 95 AD2d 691; *Matter of Fresh Meadows Assoc. v New York City Conciliation & Appeals Bd.,* 92 Misc 2d 519, affd 63 AD2d 943.) This court had already held that there was a question whether the hearing held by the defendants complied with Special Term's order. It is notable that when plaintiff finally got around to calendaring the third article 78 proceeding, after defendants had answered, Special Term directed a trial on the issue as to the viability and need for a further hearing (Special Term, Part I, Supreme Ct, NY County, index No. 10180/79, July 22, 1983, Danzig, J.).

Moreover, there are adequate State remedies to correct such agency abuses as violation of a court order. Civil contempt and fine were utilized in *Matter of McCormick v Axelrod* (59 NY2d 574) to redress an agency's violation of the terms of a court order. More directly in point, in *Liotta v Rent Guidelines Bd.* (547 F Supp 800), the landlords challenged a ruling that capped rent increases for their rent-stabilized apartments. In noting that the landlords were challenging only the process utilized in that case, and not the rent stabilization scheme as a whole, the court ruled that even if all other requirements of a section 1983 action had been met, the appropriate procedure for redressing deprivation of due process in such instance was a speedy review of the administrative action as provided for under article 78.

At the time of the institution of this action and at the time of Special Term's order appealed from it was manifest that plaintiff had failed to pursue to completion its article 78 remedies. As the Southern District ruled in *Liotta* (*supra,* pp 801-802): "Assuming without deciding that plaintiffs have satisfied the other requirements for stating a claim under § 1983, the Article 78 proceedings that exist under this regulatory framework satisfy the requirements of procedural due process. Article 78 proceedings provide for speedy review of administrative action and thus serve as an integral part of the regulatory process, rather than as a source of separate judicial review. Plaintiffs cannot complain that due process has been denied them when they have rejected the state procedure that is available to them for correcting the alleged procedural deficiency. If due process were denied every time an agency official made a decision under questionable circumstances, any losing party to the decision could attack it indirectly by suing the agency under § 1983. Although that result would not be unwarranted if the plaintiff were left without adequate opportunity to challenge the alleged error, such is not the case here. Plaintiffs cannot manufacture a § 1983 claim by pointing to the allegedly defective meeting while ignoring that part of the regulatory process that serves to redress administrative error. Rather, in considering whether defendants have failed to afford plaintiffs due process in

connection with the rent guidelines, the Court evaluates the entire procedure, including the adequacy and availability of remedies under state law" (citing, e.g., *Parratt v Taylor,* 451 US 527, *supra*).

There has been no showing that the administrative and judicial procedure available to redress the alleged governmental misconduct is not adequate. See *Dusanek v Hannon* (677 F2d 538, 542-543), ruling that a State cannot be held to have violated due process requirements when it has made procedural protection available and the complainant has simply declined to avail himself of that administrative procedure.

■ Nothing in *Patsy v Florida Bd. of Regents* (457 US 496), relied on by Special Term, respecting the exhaustion of State administrative remedies to remedy State action alleged as misconduct, really speaks to the issue here. In the face of this court's determination, it was inappropriate for Special Term to conclude that the courts of this State were incapable of compelling compliance with court orders except by collateral attack in a civil rights action or a prima facie tort action. Special Term was powerless to review the order of this court.

Special Term was deciding a motion for summary judgment, not a motion addressed to the pleadings. Hence, it was incumbent upon the plaintiff to establish a legal right supported by a factual basis. The opportunity to be heard, of which Special Term spoke, had already been afforded by order of this court. Thus, there is no basis for the court's statement, "The City's disregard of the Court's order effectively insulated itself from judicial review." Judicial review was then pending.

■ The question is not whether there was exhaustion of State administrative or judicial remedies, as discussed in *Patsy* (*supra*). There, the issue was one of discrimination in employment on the grounds of race and sex, plainly questions of Federal constitutional dimensions. There, no proceedings at the State level had occurred although it was suggested that administrative remedies under the law of the State of Florida were available. The issue was whether the Federal courts were precluded from entertaining a section 1983 action pending exhaustion of State adminis-

trative remedies. Although there is language in the opinions respecting State judicial proceedings, that question was not really tendered. Here, the process of judicial review by this court was ongoing at the time Special Term made the order appealed from. If Special Term's reading of *Patsy* (*supra*) were correct, every appeal from an administrative order where the courts have found an error at the administrative level would give rise to a section 1983 civil rights action and a basis would exist for a prima facie tort damage action, the very danger addressed in *Parratt v Taylor* (451 US 527, *supra*). The vice addressed in *Patsy* (*supra*) was discrimination against the plaintiff, clearly raising a constitutional issue. Here the issue is merely whether the administrative agency complied properly with the order of Special Term, directing a comparability hearing. However inappropriate the comments of the hearing officer may have been, they provide no basis for a section 1983 civil rights action or other judicial proceeding collaterally challenging the agency determination, where contempt or other proceedings provide an adequate remedy in the underlying action (*Batista v Rodriguez,* 702 F2d 393, 398).

The power of State courts to hear section 1983 claims (*Martinez v California,* 444 US 277, 283, n 7) does not require State courts to ignore their own procedures, in effect to ignore their own appellate procedures. No cause of action under section 1983 has been stated.

■ Nor is plaintiff on better grounds if the complaint be read as alleging a claim of prima facie tort.

"Prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or series of acts which would otherwise be lawful" (*Lincoln First Bank v Siegel,* 60 AD2d 270, 279). An essential element of such a cause of action is an allegation of special damages, fully and accurately stated with sufficient particularity as to identify and causally relate the actual losses to the allegedly tortious acts. Failure to do so lays the cause of action open to summary dismissal (*Lincoln First Bank v Siegel, supra,* pp 279-280; *Luciano v Handcock,* 78 AD2d 943, 944). Neither the complaint nor plaintiff's bill of particulars sufficiently itemizes such spe-

cial damages. Further, plaintiff has not demonstrated that defendants' acts in denying a rent increase were motivated out of malice toward plaintiff (*Tanenbaum v Anchor Sav. Bank,* 95 AD2d 827). In short, while defendants may have failed to comply with the order in the second CPLR article 78 proceeding, no evidence has been shown that such omission was an intentional wrong constituting tortious conduct. Our determination in the third article 78 proceeding is a sufficient answer (81 AD2d 788). Prima facie tort is not designed to provide a basis for collateral attack on an agency determination parallel with the judicial proceeding challenging such determination, or where contempt proceedings provide an adequate remedy (*Brandt v Winchell,* 3 NY2d 628, 633; *Ruza v Ruza,* 286 App Div 767, 769; *McGrady v Rosenbaum,* 62 Misc 2d 182, affd 37 AD2d 917). "Prima facie tort should not become a 'catch-all' alternative for every cause of action which cannot stand on its [own] legs." (*Belsky v Lowenthal,* 62 AD2d 319, 323, affd 47 NY2d 820.) No cause of action for prima facie tort is stated.

The order of Supreme Court, New York County (Martin Evans, J.), entered November 3, 1982, denying defendants' motion for summary judgment dismissing the complaint, should be reversed, on the law, and the motion granted, without costs.

SILVERMAN, BLOOM and ALEXANDER, JJ., concur with FEIN, J.; KUPFERMAN, J. P., concurs in result only.

Order, Supreme Court, New York County, entered on November 3, 1982, unanimously reversed, on the law, and the motion granted, without costs and without disbursements.