**John MONTEFUSCO and Yolanda Montefusco, Plaintiffs,**

v.

**NASSAU COUNTY; Steven Macauley; Andrew Fal, Lindenhurst Union Free School District; Board of Education of Lindenhurst Union Free School District; and Michael Mostow, Defendants.**

**No. 96–CV–1893–JS.**

United States District Court, E.D. New York.

March 11, 1999.

**234**

Richard J. Barbuto, Mineola, NY, for Yolanda Montefusco.

Robert P. O'Brien, O'Brien, McLaughlin & Kenny, Lynbrook, NY, for John Montefusco.

Stanley A. Camhi, Jaspan, Schlesinger, Silverman & Hoffman, LLP, Garden City, NY, for Michael Mostow.

Scott M. Karson, Mindy R. Kremer, Cahn Wishod & Lamb, LLP, Melville, NY, for Lindenhurst Union Free School District and Board of Education of Lindenhurst Union Free School District.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Pending before the Court are the motions of Defendants Michael Mostow ("Mostow"), Lindenhurst Union Free School District ("District"), and the Board of Education of Lindenhurst Union Free School District ("Board") for summary judgment in this civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiffs John and Yolanda Montefusco ("Montefusco") oppose the motions. For the reasons discussed below, the motions are granted in part and denied in part.

## BACKGROUND

Plaintiff John Montefusco is a resident of Nassau County and has been a school teacher with the Lindenhurst Union Free School District since approximately 1967. Defendants' Joint Rule 56.1 Statement ("Def. 56.1 Stmt."), ¶ 1. He received tenure in 1970. *Id.*, ¶ 2. Plaintiff Yolanda Montefusco is John Montefusco's wife; she also resides in Nassau County and has been a teacher with the Lindenhurst Union Free School District since 1970. *Id.*, ¶ 3. The District is a municipal corporation duly constituted pursuant to the laws of New York State. *Id.*, ¶ 4. The District's Board of Education, also a named defendant, is the duly constituted Board with the duties and powers conferred upon it pursuant to the New York Education Law. *Id.*, ¶ 5.

Defendant Mostow was the District's Associate Superintendent of Schools from July 1992 to January 1996. *Id.*, ¶ 6. His duties included administrative tasks assigned to him by the superintendent and/or the Board. *Id.* At all relevant times, defendant Stephen Macauley ("Macauley") was a police detective with the Nassau County Police Department ("NCPD"). *Id.*, ¶ 7. Defendant Andrew Fal ("Fal"), at all relevant times, was a police lieutenant with the NCPD.[1] *Id.*, ¶ 8.

In 1993, John Montefusco took certain photographs, which are the subject of this litigation, which he had developed at the Rockbottom Drug Store in Massapequa, New York on or about January 25, 1994. Def. 56.1 Stmt., ¶ 9. When Montefusco took the photos to be developed, he used the alias "Joe Borrelli" and utilized a ficti-

---

1. Neither Macauley, nor Fal, nor Nassau County is a party to this summary judgment proceeding; these parties were precluded from moving for summary judgment by Magistrate Judge Michael L. Orenstein on February 13, 1998 for their failure to appear at status conferences ordered by the magistrate judge.

tious address. *Id.*, ¶ 10. The vast majority of the photographs, copies of which have been submitted to the Court, are candid shots of teenagers, mostly females.[2] *Id.*, ¶ 12; Affidavit of Scott M. Karson ("Karson Aff."), Exh. O; J. Montefusco Aff., Exh. 1. After the photos were developed and Montefusco picked them up from Rockbottom, he dropped or lost them in the Rockbottom parking lot. Def. 56.1 Stmt., ¶ 13.

A passerby apparently found the photographs, and they were turned over to the Nassau County Police Department. *Id.*, ¶ 14. Defendant Detective Stephen Macauley conducted an investigation and determined that several of the photographs were taken from inside Montefusco's home. *Id.*, ¶ 15. On or about February 9, 1994, Montefusco received a telephone call from the NCPD requesting that he come to the Seventh Precinct. *Id.*, ¶ 16. At the precinct, Montefusco was interviewed by Detective Macauley. *Id.*, ¶ 17. During the interview, Montefusco admitted that he had taken the photos and had them developed under a fictitious name and address. *Id.* Montefusco claims that Detective Macauley was aware that he was a school teacher and that he coached the high school girl's softball team prior to the interview. Pl. 56.1 Stmt., ¶ 17. Macauley claims that Montefusco told him at the interview that he was a teacher and coach. Def. 56.1 Stmt., ¶ 17.

According to Detective Macauley's account of the interview, Montefusco also admitted that he was a voyeur, that he had other similar photos in his garage at home, and that he used the photographs, in private, to masturbate. *Id.*, ¶ 18. Montefusco claims that Detective Macauley asked him if he masturbated to the photographs and that he responded "absolutely not." J. Montefusco Aff., ¶ 11. Montefusco claims

that he denied that he was a voyeur. *Id.* Regardless, Montefusco was not arrested, nor was he charged criminally. Def. 56.1 Stmt., ¶ 19. Detective Macauley indicated at his deposition that he looked through the Penal Law and discussed the situation with the Nassau County Legal Bureau to see if he had any reason to make an arrest regarding the incident. Karson Aff., Exh. J, at 49. Within a week or two, however, Detective Macauley had concluded that no crime had been committed. *Id.*, at 51.

Nevertheless, on or about March 3, 1994 the NCPD contacted Barton B. Zabin, an investigator with the New York State Education Department. Def. 56.1 Stmt., ¶ 20. Detective Macauley and Lieutenant Fal reported to Zabin that Montefusco, a teacher in the District, had been interviewed and had admitted taking the photographs and masturbating to them. *Id.* Shortly thereafter, Zabin contacted Robert Sapir, the District's attorney, regarding his conversation with the NCPD. *Id.*, ¶ 21. Sapir in turn notified defendant Mostow, who in turn notified Superintendent Richard Holzman and the Board. *Id.*

On March 10, 1994 the Board met in executive session and discussed the allegations regarding Montefusco that had been forwarded from the state education department. *Id.*, ¶ 22. The following day, Sapir and Mostow, at the Board's direction, met with Montefusco to discuss the allegations. *Id.*, ¶ 23. At that meeting, Montefusco stated that he had met with Detective Macauley and that he had taken the photos, but he denied that he masturbated to the photographs. *Id.*, ¶ 24.

On or about March 21, 1994 the Board again held a meeting in executive session. *Id.*, ¶ 26. Detective Macauley appeared before the Board and spoke to them about Montefusco and the photographs. *Id.* At

---

2. Plaintiffs dispute that the photos are "mostly" females and that the "majority" of the photos were of teenagers. Plaintiffs' Rule 56.1 Statement ("Pl. 56.1 Stmt."), ¶ 12. However, it is clear from viewing the photos that the photos are mostly of female teenag-

ers. The photos were taken of individuals at a pool party, preparing to go to a formal dance, and of people who appear to be simply walking down the street. Affidavit of John Montefusco ("J. Montefusco Aff."), ¶ 8.

this meeting, Detective Macauley showed a number of the photographs to the Board. *Id.*, ¶ 27. Detective Macauley also told the Board that Montefusco had admitted to him that he was a voyeur, that he took the photos without the subjects' knowledge, that he developed the film under an assumed name and with a fictitious address, and that he masturbated to the photographs. *Id.*

Approximately two weeks later, on April 6, 1994, the Board, by a majority vote, issued written findings of probable cause for charges to be proffered against Montefusco by Superintendent Holzman, pursuant to New York Education Law § 3020–a. Def. 56.1 Stmt., ¶ 28. Each charge was entitled "CONDUCT UNBECOMING A TEACHER." *Id.* The first alleged that during the school year, Montefusco took photos of young females without their knowledge for the purposes of using the photos for his own sexual gratification and to masturbate with. *Id.* The second charge alleged that during an investigation conducted by Mostow and Sapir on or about March 11, 1994, Montefusco had falsely denied that he took photographs of young females for the purpose of his sexual gratification and to masturbate with. *Id.* The third and final charge alleged that, during the same investigation by Mostow and Sapir, Montefusco had falsely denied having told Detective Macauley that he took the photos of young females for the purpose of his own sexual gratification and to masturbate with. *Id.*

The following day, Montefusco filed a written request for a hearing with the State Education Department. Def. 56.1 Stmt., ¶ 31. Montefusco designated Robert L. Weiner, Esq., as his attorney for the hearing and selected Phillip Griffith as a member of the hearing panel. *Id.* The Board designated Mostow to be the District's representative at the hearing to be held pursuant to New York Education Law § 3020–a. *Id.*

On or about April 7, 1994, Montefusco was suspended, with pay, from his class-room duties and was removed from extra-curricular activity assignments, including coaching the girl's softball team, pending the outcome of the § 3020–a hearing. *Id.*, ¶ 33. Plaintiff claims that he was removed from his extracurricular assignments prior to the date of his actual suspension. Pl. 56.1 Stmt., ¶ 33.

The hearing commenced on August 30, 1994 and concluded on or about March 13, 1995. Def. 56.1 Stmt., ¶¶ 34, 36. At the hearing, Montefusco was represented by counsel, had the opportunity to testify on his own behalf, subpoena witnesses, present witnesses, and cross-examine witnesses. *Id.*, ¶ 35. The hearing panel issued its Findings of Fact and Recommendations on April 20, 1995. *Id.*, ¶ 37; Pl. 56.1 Stmt., ¶ 36. The hearing panel dismissed the charges against Montefusco, with prejudice, and ordered that Montefusco be restored and reassigned to his former school and teaching duties in the District. Def. 56.1 Stmt., ¶ 37. Montefusco remained employed and continues to be employed by the District as a teacher. *Id.*, ¶ 38.

A Notice of Claim, dated July 18, 1995, and file-stamped as received by the Superintendent's Office on July 20, 1995, was served on the District by John and Yolanda Montefusco. *Id.*, ¶ 39; Karson Aff., Exh. E. The Notice of Claim asserted that Mostow had made defamatory statements about Montefusco on March 14, 1994 to Meg McKenna, Assistant Superintendent; on March 21, 1994 to the Board at executive session and to individual Board members immediately preceding the executive session; on April 8, 1994 to Joyce Inzirello, then president of the high school parent-teacher-student association, and in January 1995 to Frank Smith, principal. Def. 56.1 Stmt., ¶ 40. The Notice of Claim also alleged violations of Montefusco's civil rights, as well as intentional infliction of emotional distress, malicious prosecution and *prima facie* tort. *Id.*, ¶ 42.

The Montefuscos subsequently commenced this action on April 29, 1996. An amended complaint was filed on September 15, 1997. The amended complaint contains seven claims. Count I asserts that the photographs are constitutionally protected speech under the First Amendment, that the actions of the defendants deprived plaintiff of his rights thereunder. Count II alleges that the defendants violated one or more of plaintiff's constitutional rights, including free speech and expression, right of privacy, right to liberty, and freedom from deprivation of property without due process. Count III asserts a claim of intentional infliction of emotional distress against Nassau County, Detective Macauley, Lieutenant Fal, and Mostow. Count IV alleges a claim of *prima facie* tort against all defendants. Count V asserts a defamation claim against all defendants. Count VI alleges malicious prosecution against all defendants for their roles in bringing the § 3020–a charges. Finally, Count VII is a loss of consortium claim brought by Yolanda Montefusco.

## LEGAL STANDARD

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under the law of the Second Circuit, a district court must weigh several considerations in evaluating whether to grant a motion for summary judgment with respect to a particular claim. *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994) (internal case citations omitted). First, the moving party carries the burden to demonstrate that no genuine issue respecting any material fact exists. *Id.* Second, all ambiguities and inferences must be resolved in favor of the non-moving party. *Id.* Third, the moving party may obtain summary judgment by showing that no rational jury could find in favor of the non-moving party because the evidence to support its case is so slight. *Id.* Finally, the trial court's duty is confined to issue-finding and does not extend to issue-resolution. *Id.*

Additionally, once the moving party has demonstrated the absence of a dispute regarding any genuine issue of material fact, the non-moving party is required to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). If the non-moving party fails to submit a Rule 56.1 statement of facts it believes are in dispute, the court may deem as admitted the facts set forth in the movant's 56.1 statement. *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir. 1984).

## DISCUSSION

As a preliminary matter, the plaintiffs indicate in their memorandum of law that they voluntarily withdraw Count V of their amended complaint, which alleged defamation against all defendants. Plaintiffs' Memorandum of Law in Opposition, at 4 n. 1. Thus, the motion for summary judgment is GRANTED as to this claim, and Count V of the Amended Complaint is DISMISSED with prejudice against all defendants.

Turning to the substance of this motion, it is clear from an examination of the parties' Rule 56.1 Statements that there are no genuine issues of material fact in dispute. Any factual disagreements between the parties appearing in the 56.1 Statements are either immaterial or irrelevant to the determination of this motion.[3]

3. The most apparent factual dispute—between what Montefusco claims he told Detective Macauley at the Seventh Precinct and what Macauley claims Montefusco told him— is irrelevant to the determination of this mo-

tion. The relevant fact is that Detective Macauley told the Board and Mostow that Montefusco had admitted to him that he was a voyeur and that he masturbated to the photographs. This information from Macauley,

Thus, the Court must resolve the legal issues that arise from this set of facts as presented.

## A. Claims Against the Board of Education

■ The amended complaint names as a defendant the Board of Education of Lindenhurst Union Free School District, but does not name any of its members in either their official or personal capacities. It is beyond dispute that there is no cause of action for damages under 42 U.S.C. § 1983 for damages against a school board or its members in their official capacities. *Mazza v. Hendrick Hudson Cent. Sch. Dist.*, 942 F.Supp. 187, 192 (S.D.N.Y.1996) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *see also Gentile v. Wallen*, 562 F.2d 193, 195 (2d Cir.1977), *Mazurek v. Wolcott Bd. of Educ.*, 815 F.Supp. 71, 77 (D.Conn.1993).

Plaintiffs offer no argument in opposition to this proposition. *See* Plaintiffs' Memorandum of Law in Opposition, at 5. Therefore, the motion of defendant Board of Education is GRANTED in its entirety, and all claims against the Board are DISMISSED.

## B. Statute of Limitations for Counts III and IV

■ The applicable statute of limitations for intentional infliction of emotional distress, alleged in Count III, is one year. *See Ornstein v. Pakistan Int'l Airlines Corp.*, 888 F.Supp. 28, 31 (S.D.N.Y.1995). Moreover, where, as here, a plaintiff alleges *prima facie* tort in order to overcome the strictures of a less favorable statute of

limitations, courts do not hesitate to dismiss the *prima facie* tort claim. *See Jones v. City of New York*, 161 A.D.2d 518, 519, 555 N.Y.S.2d 788, 789 (1st Dep't 1990); *Milone v. Jacobson*, 78 A.D.2d 548, 549, 432 N.Y.S.2d 30, 31 (2d Dep't 1980).[4]

■ This action was filed on April 19, 1996. All of the actions of the defendants which are alleged to have constituted intentional infliction of emotional distress and *prima facie* tort occurred prior to the April 20, 1995 decision by the panel, that is, sometime in March and April of 1994. Despite plaintiffs' arguments that these claims survive under the "doctrine of continuing wrongs," *see Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir.1980), these claims are barred by the applicable statutes of limitation.[5]

■■ Even if the Court were to consider the merits of these two claims, the counts still would be dismissed. An essential element of a claim for intentional infliction of emotional distress is a showing that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86 (1983). Despite a thorough search of this record, the Court can find no behavior by any of these defendants which approaches this high threshold of "atrocious" and "outrageous" behavior.

■ Regarding the claim for *prima facie* tort, a plaintiff must demonstrate the intentional infliction of harm, resulting in

---

combined with their own viewing of the photos, is the information upon which these defendants acted. It is the reasonableness of the defendants' actions, upon having received this information, that is at issue here.

4. The statute of limitations for *prima facie* tort is three years. *Bassim v. Hassett*, 184 A.D.2d 908, 909, 585 N.Y.S.2d 566, 567–68 (3d Dep't 1992).

5. A cause of action accrues when "it arises or comes into existence," or when it "come[s] into existence as an enforceable claim." *Insurance Co. of N. Am. v. ABB Power Generation, Inc.*, 91 N.Y.2d 180, 186, 188, 668 N.Y.S.2d 143, 145–46, 147, 690 N.E.2d 1249 (quoting Black's Law Dictionary 21 [6th ed.1990] ) (majority opinion and Levine, J., concurring).

special damages, without any excuse or justification, by an act or acts that otherwise would be lawful. *Sadowy v. Sony Corp.*, 496 F.Supp. 1071, 1074 (S.D.N.Y. 1980). Moreover, the plaintiff must establish that malevolence was the sole motive for the defendant's otherwise lawful act. *Bassim*, 184 A.D.2d at 910, 585 N.Y.S.2d at 568. The plaintiff's special damages must be alleged "fully and accurately ... with sufficient particularity as to identify and causally relate the actual losses to the allegedly tortious acts." *Broadway & 67th St. Corp. v. City of New York*, 100 A.D.2d 478, 486, 475 N.Y.S.2d 1, 6 (1st Dep't 1984). Without such particularity, the claim may be summarily dismissed. *Id.*

 Examining the allegations made here under the claim for *prima facie* tort, plaintiffs have failed both to establish that the defendants acted solely because of their malevolence towards them, and also have failed to allege with particularity any special damages. The actions taken by the defendants, under these circumstances, were, in the Court's view, entirely reasonable and bear no indicia of malevolence.

Thus, summary judgment must be GRANTED to the moving defendants on Counts III and IV of the Amended Complaint, and the claims of intentional infliction of emotional distress and *prima facie* tort are DISMISSED.

## C. Count II, Alleged Deprivation of Due Process

Count II of the Amended Complaint alleges that the defendants

intentionally and/or knowingly committed acts that violated one or more of J. MONTEFUSCO'S Federal and State Constitutional rights, including but not limited to right of free speech and expression, right of privacy, right to liberty and freedom from deprivation of property without due process of law, and right to be free from attempt to punish persons outside the penal code and without due process of law.

amended complaint, ¶ 50. A generous reading of this language would seem to indicate that Montefusco claims only a violation of his procedural due process rights; however, in the papers submitted in opposition to this motion, plaintiffs indicate that the claim also involves a violation of substantive due process. Plaintiffs' Memorandum of Law in Opposition, at 7–9. For this reason, the Court will discuss both aspects, procedural and substantive, of Montefusco's claim.

 "Generally, procedural due process requires an opportunity for a meaningful hearing prior to the deprivation of a significant property interest." *Catanzaro v. Weiden*, 140 F.3d 91, 94 (2d Cir.1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Count II of Montefusco's Amended Complaint does not specify what "property interest" he was deprived of. His suspension by the District, pursuant to § 3020–a of the Education Law, was with pay. Def. 56.1 Stmt., ¶ 33. Montefusco remained employed by the District after the hearing panel dismissed the charges against him, and continues to be employed as a teacher in the District. *Id.*, ¶ 38. Thus, there is no allegation raised in the amended complaint that Montefusco was deprived of any property interest.

 Aside from this defect in the pleadings, to the extent that Montefusco alleges that the process itself was unconstitutional, that argument also fails. There is no dispute that Montefusco was interviewed by Mostow and Sapir (acting at the request of the Board) prior to charges being brought; that he was suspended with pay pending the outcome of a hearing brought pursuant to state law; that during those hearings he was represented by counsel, had the opportunity to cross-examine and call witnesses; and offer other evidence on his own behalf. In sum, the procedures outlined by § 3020–a of the Education Law, and followed precisely here, provided "more than adequate procedural safeguards to satisfy the plain-

tiff's due process rights under the Fourteenth Amendment." *Sullivan v. Board of Educ. of the Eastchester Union Free Sch. Dist.,* 131 A.D.2d 836, 838, 517 N.Y.S.2d 197, 199 (2d Dep't 1987) (addressing procedures dictated by § 3020-a). On this record, there is no basis for a claim that Montefusco was denied any due process. Moreover, plaintiffs' memoranda of law submitted in opposition to these motions indicate that they do not challenge the sufficiency of the process. Plaintiffs' Memorandum of Law in Opposition, at 7–9. Thus, the Court turns to the allegation that Montefusco's substantive due process rights were violated.

■ "Substantive due process protects [individuals] against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect' or 'ill-advised'." *Catanzaro,* 140 F.3d at 95 (quoting *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir. 1995)) (brackets in original). As stated by the Second Circuit, "[t]he core of the concept of due process has always been an individual's freedom from arbitrary interference by the government." *Medeiros v. O'Connell,* 150 F.3d 164, 169–70 (2d Cir. 1998) (citing *Hurtado v. California,* 110 U.S. 516, 527, 4 S.Ct. 111, 28 L.Ed. 232 (1884)); *see also Collins v. City of Harker Heights,* 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (government conduct must be arbitrary or conscience-shocking before a violation of substantive due process occurs).

In this case, plaintiffs argue that the charges brought against Montefusco involved nothing more than private conduct, which occurred while Montefusco was off-duty, and was noncriminal. Plaintiffs' Memorandum of Law in Opposition, at 8. Plaintiffs assert that "[f]rom a substantive point of view, the Board had no business initiating the charges in question. There is nothing in the charges that links the conduct complained of with Montefusco's duties, performance or responsibilities in

the school." *Id.* Plaintiffs continue by arguing that Mostow, the Board and the District "had no duty to protect students from Montefusco's candid picture taking." *Id.* at 9. "The photography was private in nature and with respect to voyeurism and masturbation, the acts, even if true, were likewise private in nature and non-criminal." *Id.*

Defendants respond that their actions were reasonable, measured, and proper in light of the information they had obtained from the New York State Education Department and Detective Macauley. Moreover, the defendants point out that the Board interviewed Macauley and viewed a sample of the photographs prior to directing Mostow and Sapir to meet with Montefusco. Moreover, "[t]here is no dispute that Det. Macauley told the Board that Montefusco admitted to being a voyeur and masturbating to the photographs." Mostow Reply Memorandum, at 3. In sum, defendants argue that the Board was well within its authority to bring charges based on this information. *Id.*

■ The Court agrees with the defendants that the plaintiffs' view of this situation is overly simplistic. The information received by Sapir, Mostow, and the Board implicated the health, safety and welfare of the District's students. Based upon their deliberate investigation of the matter, including an interview with Detective Macauley and seeing some of the photos with their own eyes, the members of the Board took reasonable action by bringing charges against Montefusco. There is no dispute that Montefusco was a teacher of students in the same age range of those persons depicted in the photos, and that he also was the coach of the girls' softball team. The information received by the Board was that Montefusco was a voyeur and that he became sexually aroused and excited by the sight of the girls depicted in the photographs. Moreover, the Board was informed that the photos admittedly were taken surreptitiously and were developed under an assumed name and fictitious ad-

dress. Under these circumstances, the actions taken by the Board, the District, and Mostow were more than reasonable. In fact, the Court agrees with defendants that, presented with information that a school teacher engaged in sexual self-stimulation with the aid of photographs of school-aged children—whether ultimately true or not—the defendants would have been remiss in their duties had they taken no action at all.

As a matter of law, the actions taken by the defendants here were not arbitrary, conscience-shocking, or oppressive in a constitutional sense. *See Catanzaro,* 140 F.3d at 95. Charges were brought, after an investigation, and Montefusco ultimately was cleared of any wrongdoing. Nor were the actions of these defendants incorrect or ill-advised. The information these defendants had obtained led them to take appropriate and reasonable actions under the circumstances as they knew them to be. Therefore, the Court finds that there is no genuine issue of material fact involving this claim, and that the moving parties are entitled to judgment as a matter of law. Defendants' motions for summary judgment on the due process claims are therefore GRANTED, and Count II of the Amended Complaint, insofar as it alleges a violation of due process, is DISMISSED.

## D. *Counts I and II: Violation of First Amendment Rights*

"The First Amendment literally forbids the abridgment only of 'speech,' but we have long recognized that its protection does not end at the spoken or written word." *Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). At issue in this case is whether the photos taken by Montefusco are, as he argues, "speech" entitled to protection by the First Amendment.

There is no doubt that the protection granted by the First Amendment extends beyond political speech and verbal expression. *See Burstyn, Inc. v. Wilson,* 343 U.S. 495, 501–02, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) (film); *see also Bery v. City of New York,* 97 F.3d 689, 694 (2d Cir.1996), *cert. denied,* 520 U.S. 1251, 117 S.Ct. 2408, 138 L.Ed.2d 174 (1997), (pointing out that the First Amendment protects, *inter alia,* theater, music, film, entertainment, parades, and peaceful marches). Indeed, "[i]f the First Amendment reached only expressions conveying a particularized message, its protection would never reach the ... painting of Jackson Pollock, music of Arnold Schönberg, or Jabberwocky verse of Lewis Carroll." *Id.* (quoting *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston,* 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995)) (internal quotation marks omitted). Thus, the Second Circuit concluded in *Bery* that "[v]isual art is as wide ranging in its depiction of ideas, concepts and emotions as any book, treatise, pamphlet or other writing, and is similarly entitled to full First Amendment protection." *Id.* at 695 (footnote omitted).

However, the *Bery* court also recognized that images nevertheless must communicate some idea in order to be protected under the First Amendment. *Bery,* 97 F.3d at 695; *see also Johnson,* 491 U.S. at 404, 109 S.Ct. 2533 (holding that conduct must be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.") (quoting *Spence v. Washington,* 418 U.S. 405, 409, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974)).[6] Significantly, the

---

**6.** To determine whether conduct is imbued with such elements of communication, the Supreme Court has asked whether an intent to convey a particular message was present and whether there was a great likelihood that the message would be understood by the viewer or listener. *Id.* (citing *Spence,* 418 U.S. at 410–11, 94 S.Ct. 2727). Thus, as set forth in *Johnson,* the Court has recognized the expressive nature of the wearing of black armbands in protest of the Vietnam war, *Tinker v. Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 505, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); a sit-in by blacks in a whites-only area to protest segregation, *Brown v. Louisiana,* 383 U.S. 131, 141–42, 86

Second Circuit pointed out that visual images are "a short cut from mind to mind." *Id.* (quoting *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943)).

Thus, under this standard, albeit broadly interpreted, there must still be (1) a message to be communicated and (2) an audience to receive that message, regardless of the medium in which the message is sought to be expressed. *See Hurley*, 515 U.S. at 568, 115 S.Ct. 2338 (pointing out importance of the sender/receiver model of communication by noting that, in the context of a parade, if nobody watches it, it may as well not have happened). Otherwise, if either is lacking, there is absolutely nothing to transmit "from mind to mind." Without an element of expression, there is no risk to the "speaker" or creator of art that his or her ideas or messages will be unlawfully extinguished by governmental action in contravention of the First Amendment. Therefore, although a "difficult" task, "[c]ourts must determine what constitutes expression within the ambit of the First Amendment and what does not." *Bery*, 97 F.3d at 696 (holding that visual art, and the street marketing of that art, were entitled to full First Amendment protection).

However, under the facts presented here, the Court determines that it is not necessary to reach this difficult question of whether or not the photographs are protected by the First Amendment. That is because, regardless of whether the photographs are protected, there is no evidence of a deprivation of any right. Even if the photographs were entitled to full First Amendment protection, the defendants here did not violate that right.[7]

There is no evidence in this record that the defendants attempted to prohibit Montefusco from taking the photos, developing the photos, selling the photos, possessing the photos, or displaying the photos. There also is no evidence to indicate that the defendants here sought to stifle any message, no matter how undefined, that Montefusco wished to communicate through the photographs. Nor is there any evidence that defendants sought to punish Montefusco or retaliate against him for his picture-taking activity, nor prohibit him from engaging in any of these activities in the future.

Rather, the defendants simply determined that, based on the nature of the photos—protected by the First Amendment or not—Montefusco should be brought up on charges of conduct unbecoming a teacher.[8] Given the information

S.Ct. 719, 15 L.Ed.2d 637 (1966); the wearing of U.S. military uniforms in a dramatic presentation critical of U.S. involvement in Vietnam, *Schacht v. United States*, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970); and picketing for a variety of causes, *Food Employees v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 313–14, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), *United States v. Grace*, 461 U.S. 171, 176, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983).

7. Were the Court to reach this question, the Court would hold that the photographs were not entitled to the protection of the First Amendment. When Montefusco was asked at his deposition what, if any, intentions he had with respect to the photographs at issue, he testified that "most of them would be thrown out." Karson Aff., Exh. L, at 28. In his affidavit, Montefusco states that photography is simply a hobby. J. Montefusco Aff., ¶ 6. He states that he takes many photographs in the hope of capturing something of historical or topical value so that he can bring it into his classroom for discussion purposes. *Id.*, ¶ 9. According to Montefusco, the subject photos are "candid shots from two pool parties ... a prom gathering, and passerby of (his) house." *Id.*, ¶ 8. While Montefusco states that it has been his practice to affix certain of his photos to his bulletin board or from time to time to display certain photographs, there is no indication at all that he intended to do so with the photographs at issue here. Thus, there is no identifiable message sought to be communicated, nor is there an identified audience to whom a message was being broadcast. Without any element of expression at all, the photos would not receive the protection of the First Amendment.

8. In light of the evidence on this record, Montefusco's conclusory arguments that the Board did not conduct a reasonable investigation and that there was no probable cause to

the defendants possessed, which consisted of the testimony of Detective Macauley regarding Montefusco's statements to him and their own viewing of a number of the photographs, there is nothing in this record to support the claim that defendants abridged Montefusco's First Amendment rights.

Thus, the defendants' motions for summary judgment on the claims that they violated Montefusco's First Amendment rights, as alleged in Counts I and II of the Amended Complaint, are GRANTED, and these counts are DISMISSED.

### E. Count VI: Malicious Prosecution

██ The only claim remaining is the allegation of malicious prosecution against the defendants. However, because all federal claims have been dismissed, the Court declines to exercise jurisdiction over this remaining state law claim. A district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Nerney v. Valente & Sons Repair Shop, 66 F.3d 25, 30 (2d Cir.1995). In declining to exercise jurisdiction over the malicious prosecution claim, the Court has considered its decision in light of judicial economy, convenience, and fairness to the parties. See United Mine Workers v. Gibbs, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Moreover, in light of the questions regarding the validity of this claim in the unique educational context presented here, in the interests of comity the Court determines that this claim would be better resolved in a state forum. See Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); Powell v. Gardner, 891 F.2d 1039, 1047 (2d Cir.1989) (affirming district court's dismissal of state law claims after dismissal of all federal claims). Thus, the claim of

malicious prosecution brought in Count VI is DISMISSED without prejudice.

### F. Yolanda Montefusco's Claim for Loss of Consortium

██ Yolanda Montefusco's claim for loss of consortium, as alleged in Count VII of the Amended Complaint, must also be dismissed. The loss of consortium claim is derivative of the injured spouse's claim and may not exist on its own. Gerzog v. London Fog Corp., 907 F.Supp. 590, 605 (E.D.N.Y.1995) ("where the injured spouse's underlying claims are dismissed, the claim for loss of consortium must similarly be dismissed"); Liff v. Schildkrout, 49 N.Y.2d 622, 633, 427 N.Y.S.2d 746, 749, 404 N.E.2d 1288 (1980) (loss of consortium is a derivative action does not exist independently of injured spouse's claims).

Accordingly, in light of the dismissal of Counts I–VI of the Amended Complaint, Yolanda Montefusco's claim for loss of consortium in Count VII is DISMISSED without prejudice.

### CONCLUSION

For the reasons discussed above, the motion of Defendant Board of Education of Lindenhurst Free Union School District is GRANTED in it entirety. Defendant Michael Mostow's motion for summary judgment is GRANTED with respect to all claims except that of malicious prosecution. The motion of Defendant Lindenhurst Union Free School District is GRANTED with respect to all claims except that of malicious prosecution.

In light of the dismissal of all federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claim. 28 U.S.C. § 1367(c). Thus, the malicious prosecution claim is DISMISSED without prejudice. The loss of consortium claim is also DISMISSED without prejudice. Moreover, plaintiffs

proffer charges against him are absurd. See Plaintiffs' Memorandum of Law in Opposition, at 6.

have withdrawn Count V, alleging defamation, against all defendants. Thus, Count V is DISMISSED with prejudice.[9]

SO ORDERED.

---

9. However, all claims except that of defamation remain against non-moving defendants Nassau County, Stephen Macauley and Andrew Fal.