William Allan BROWN, Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

July 25, 1972.

John E. Babiarz, Jr., of Biondi & Babiarz, Wilmington, for defendant below, appellant.

Kent Walker, State Sol., Wilmington, for plaintiff below, appellee.

Before WOLCOTT, C. J., and CAREY and HERRMANN, JJ.

HERRMANN, Justice.

In this appeal from convictions of carrying concealed a deadly weapon [11 Del.C. § 463] and possession of an hypodermic syringe [16 Del.C. § 4716(c)], the question is whether the search and seizure was reasonable and in conformity with the requirements of the Fourth Amendment, under the standards of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

I.

The defendant Brown was operating an automobile when he was stopped for a rou-

tine traffic check by State Trooper Van Brunt. The suspicions of the police officer had been aroused by seemingly strange and furtive looks and glances directed toward the police car by Brown and his two companions. Upon being stopped and interrogated, Brown was unable to produce a registration card; whereupon Van Brunt took Brown into the police car and initiated a check of the vehicle's registration via police radio. Van Brunt became "a little apprehensive" when, during the wait, Brown talked of other police officers and inquired whether his name was being mentioned in police circles. The radio report confirmed Brown's ownership of the car, and Van Brunt was about to release Brown as "cleared" on the routine stop, when Van Brunt was interrupted by two urgent radio messages, received almost simultaneously, from other cruising State police officers who had overheard Van Brunt's radio check of Brown's registration: Sergeant Jester and Detective Cole. The first radio instruction to Van Brunt was to remove Brown from the police car; whereupon Van Brunt directed Brown to leave the police car and wait alongside. Then Sergeant Jester informed Van Brunt that he "had confidential information" that Brown "was in possession of a hand gun of some kind" and Jester "wanted him [Van Brunt] to be careful with" Brown. Jester then advised that he "was enroute to that particular spot" and that he "would back him up due to the circumstances", the "circumstances" being "information that he had a weapon".

By the other intervening radio message, Detective Cole informed Van Brunt that he "had information from a woman and her son who is 16 years old—it was either the same day earlier or the day before—that Mr. Brown was supposed to be in the possession of a gun and had pulled it on this boy at the 7–11 at Foulk and Grubb Roads".

Upon receipt of these warnings, Van Brunt immediately made a "pat-down" search of Brown standing alongside the police car, and felt "a large bulge" in the "top part of his left boot". From the "bulge", Van Brunt seized the knife, sheath, and hypodermic syringe here in controversy.

The defendant's motion to suppress the evidence thus seized was denied. The main issue raised at the suppression hearing, and here, relates to the reliability of the informant* and the relevancy thereof under the standards of *Terry*.

## II.

Recently, in Adams v. Williams, 407 U. S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the United States Supreme Court had the first occasion "to give some flesh to the bones of *Terry*", 407 U.S. at 153, 92 S.Ct. at 1927. There, too, the police officer searched for and seized a weapon upon the basis of the report of an informant. There, too, the attack upon the reasonableness of the search and seizure was based, in large measure, upon the lack of personal observation by the policeman and upon the asserted unreliability of the informant.

The test applied in *Adams* for a pre-arrest *Terry* search was whether the infor-

---

* Detective Cole testified at the suppression hearing that on the same day or the previous day, he had talked with the informant and his mother, both of whom he knew "from previous encounters"; that the informant stated to Cole "that he (the informant) was at the 7–11 at Foulk and Grubbs and that he got into an argument about money with William Brown * * * and that William Brown pulled a pistol on him * * *."

Sergeant Jester testified at the suppression hearing that the informant communicates with him "almost weekly". In response to the Court's inquiry as to the general use to which Jester had put the informant previously, Jester testified: "He had given me information on burglaries, drug cases, to the extent that some of this information was used in search warrants and has been found to be very prudent. To my knowledge he has never given me anything that hasn't checked out."

mation received by the officer "carried enough indicia of reliability" to justify the officer's action. There, it was held that the officer acted reasonably in reaching through a window of a parked automobile and in seizing a gun from the waistband of the occupant, all upon the report of an informant who was known to the officer and who had previously provided the officer with information. In so holding, the United States Supreme Court stated in *Adams*: (407 U.S. at 147, 92 S.Ct. at 1924)

"* * * we reject respondent's argument that reasonable cause for a stop and frisk can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may very greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a street crime seeks immediate police aid and gives a description of his assailant, or when a credible informant warns of a specific impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response."

The instant case is a stronger case than *Adams* as to the reliability of the officer's informants. Trooper Van Brunt's informants were his fellow officers upon whose information and warnings he was, of course, entitled and obliged to rely.

■ Going one step back, the defendant attacks the reliability of Sergeant Jester's and Detective Cole's informant. In testing the reasonableness of Van Brunt's reaction to the information relayed to him by Jester and Cole, we deem irrelevant the reliability of the latters' informant. In the exercise of the judgment of a reasonably prudent policeman, in the exigencies of the mo-

ment, Van Brunt could hardly be expected to stop the proceedings long enough to question and adjudge the reliability of the informant upon the basis of whose report his fellow officers saw fit to issue the urgent warning. As stated in *Adams*, "the subtleties of the hearsay rule should not thwart an appropriate police response" to such good faith warning. The information received by Van Brunt from his fellow officers, of course, carried ample "indicia of reliability" to justify Van Brunt's action.

### III.

The defendant contends that Trooper Van Brunt did not testify that he feared for his own safety, or for the safety of others, at any time in the confrontation with Brown; that, therefore, a *Terry* prearrest search was unwarranted. This contention is unacceptable. In both *Terry* and *Adams*, the Court spoke of the existence of justification or reason for fear, rather than the existence of fear itself, as the basis for the protective search authorized by *Terry*. In *Terry*: "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presumably dangerous to the officer or to others", he may conduct a limited protective search for concealed weapons. Also in *Terry*: the issue is "whether a reasonably prudent man would have been warranted in believing" the suspect "was armed and thus presented a threat to the officer's safety while he was investigating his suspicious behavior." 88 S.Ct. at 1883. And in *Adams*, the Court found that the policeman "had ample reason to fear for his safety"; that the policeman's action was a "limited intrusion designed to insure his safety"; and that the intrusion was reasonable therefore, notwithstanding the fact that there was no testimony by the policeman that he actually experienced fear for his own safety or the safety of others. At 148 of 407 U.S., 92 S.Ct. at 1924.

We find no requirement in either *Terry* or *Adams* that the policeman must actually

experience fear before he is entitled to make a *Terry* search or that he must actually admit such fear before the fruits of his search may be admitted in evidence. In our judgment, there should be no such prerequisites.

The subjective fears and concerns of the individual officer are not the test of reasonableness. One officer may be unduly rash and may have a high threshhold of fear; another may be overly cautious and too easily alarmed; but both types are entitled to the protection of a *Terry* search so long as their actions meet the reasonably-prudent-man test established in *Terry*.

The latter is the objective test to be applied. In cases such as this, there is the overriding necessity of striking a proper balance between the right of the police officer to protect himself and the right of the citizen to be free from unreasonable intrusion. See State v. Culver et al., Del. Supr., 288 A.2d 279 (1972); People v. Simon, 7 Cal.3d 186, 101 Cal.Rptr. 837, 496 P.2d 1205 (1972). A trial of the subjective emotions of the police officer has no place in the difficult determination of that delicate balance.

We hold, therefore, that the actual experiencing and admission of fear by the police officer, for his own safety or for the safety of others, are not prerequisite to the reasonableness of a protective pre-arrest *Terry* search or to the admission in evidence of the fruits thereof. The existence of justification or good cause for such fear, alone, may be sufficient in a proper case to support the reasonableness of the intrusion. The instant case is such a case.

We note approvingly that Trooper Van Brunt made the limited pat-down search approved in *Terry* for the purpose. The search here was limited in scope to an intrusion reasonably designed to discover a weapon. The officer did not go into Brown's pockets or under the outer surface of his garments. The officer explored

further only after he felt the weapon. This is the limit of a pre-arrest *Terry* search.

We conclude that this was a reasonable protective search incident to a reasonable investigatory stop. It was in conformity with the Fourth Amendment under the guidelines of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Compare Nash and Wheat v. State, Del. Supr., 295 A.2d 715 (1972).

Affirmed.