Jasen, J.
The issue on this appeal concerns the validity under the Fourth Amendment of a warrantless search of the defendant’s handbag and the seizure of a loaded revolver. After a hearing, the defendant’s motion to suppress the weapon was denied. Thereupon, she entered a plea of guilty to the lesser offense of attempted possession of a dangerous weapon and thé Appellate Term, Second Department, affirmed the' conviction. We hold that the motion to suppress was properly denied and, accordingly, affirm the order of the Appellate Term.
While seated in an automobile stopped at an intersection in Queens, the defendant was accosted by one Felix Dotson. Dotson, with whom the defendant had been living, entered the vehicle on the passenger side, pushed the defendant’s younger brother aside and grabbed her by the wrist. Brandishing a knife at her throat, he demanded, “ Where did you find this car? ” The defendant managed to free herself from his grasp and ran from the vehicle to a nearby police car. She reported that Dotson had been harassing her for several days and had just menaced her with a knife. The police then returned to the defendant’s automobile and arrested Dotson. He told the arresting officer, Patrolman DeVito, that the defendant was his wife and that she was “ sick ”. Enroute to the police station, Dotson told Patrolman DeVito that the defendant had a gun in her possession.
The defendant preceded the arresting officer to the police station to file a complaint against Dot-son. At the police station, Patrolman DeVito confronted her. and asked for her handbag, which she surrendered to him. DeVito then searched the handbag and found a loaded .22 caliber revolver.[1] Upon showing the *69 revolver to the' defendant, she admitted not having a permit for it. Thereupon, she was arrested and charged with possession of a dangerous weapon. It is conceded that when the handbag was searched and the weapon seized, the defendant was not under arrest and the officer did not have a search warrant. Nor is it contended that the defendant consented to the search.
This case presents a somewhat unique variation in a line of cases arising under the “ stop ” and “ frisk ” law (Code Crim. Pro., § 180-a; CPL 140.50) and the Reasonable Search and Seizure Clause of the Fourth Amendment[2]. The touchstone under the statute as well as under the Federal Constitution is reasonableness. "Where probable cause for an arrest is lacking, the forcible encounter, the stop, or the seizure, of a citizen by a police officer must arise from a reasonable suspicion that criminal activity is afoot.[3] (Code Crim. Pro., § 180-a; CPL 140.50; Adams v. Williams, 407 U. S. 143, 145; cf. Terry v. Ohio, 392 U. S. 1, 22; Sibron v. New York, 392 U. S. 40, 72-73 [Harlan, J., concurring] ; see, also, People v. Rosemond, 26 N Y 2d 101, 103-104; People v. Rivera, 14 N Y 2d 441, 445.) There is, however, no ready test for determining reasonableness. Rather, a balance must be struck between the need to seize (or stop) and the invasion which the seizure (or stop) entails. (Cf. Terry v. Ohio, 392 U. S., at p. 21; see People v. Rivera, 14 N Y 2d, at pp. 444-445.) In the final analysis, the test is whether the facts available to the officer at the moment of the seizure would warrant a person of reasonable caution in believing that the action taken was appropriate. (Cf. Terry v. Ohio, 392 U. S., at pp. 21-22; see People v. Taggart, 20 N Y 2d 335, 339-341.)
To be sure, reasonable cause for an investigatory stop may be based on the police officer’s personal observation or on information supplied by another person. (Adams v. Williams, 407 U. S., at p. 147; People v. Taggart, 20 N Y 2d, at pp. 337, 339; cf. People v. Arthurs, 24 N Y 2d 688, 691-693 [concurring information *70 from several individuals, some anonymous, sufficient for probable cause to detain, frisk and search defendant].) But where an informant’s tip is involved, it must carry sufficient indicia of reliability to justify the forcible encounter. (Adams v. Williams, 407 U. S., at pp. 146-147; see People v. Taggart, 20 N Y 2d, at pp. 337, 339; cf. People v. Arthurs, 24 N Y 2d, at pp. 691-693.) It follows that since the standard of reasonable suspicion to stop is lower than the standard of probable cause for an arrest, a less stringent standard should apply for screening tips in the stop context — i.e., an officer may stop on less or different information than probable cause would require. (See Adams v. Williams, 407 U. S., at pp. 146-147; People v. Taggart, 20 N Y 2d, at pp. 338, 340-341, 343.)
Not every stop, however, will support an incidental search for weapons. The statute predicates such a search on the police officer’s reasonable suspicion that the individual is presently dangerous. (Code Crim. Pro., § 180-a, subd. 2; CPL 140.50, subd. 2; see Sibron v. New York, 392 U. S., at p. 64.) But where the stop is for a “ serious and violent crime ”, we have recognized an immediate and automatic right to search—i.e., the reasonable suspicion of criminal activity justifies the stop and frisk or search. (People v. Mack, 26 N Y 2d 311, at pp. 317-318; see People v. Taggart, 20 N Y 2d, at pp. 341-342.) It follows that where reliable information or facts available to the police officer link the individual to a weapon, the belief of danger to himself and others is real and reasonable and an immediate search is justifiable. (People v. Mack, 26 N Y 2d, at pp. 317-318; see People v. Taggart, 20 N Y 2d, at pp. 339-340; cf. People v. Arthurs, 24 N Y 2d, at pp. 691-692.)
Here, the forcible encounter between the police officer and the defendant occurred in a precinct station house. It was, in our view, precipitated by a reasonable suspicion that the defendant was carrying a concealed weapon. We think the totality of the circumstances necessitated an immediate police response (Sibron v. New York, 392 U. S., at p. 73 [Harlan, J., concurring]), and although that response was predicated on an informant’s tip, we find that the requisite indicia of reliability were present to warrant the action taken.
The officer making the stop had just investigated a serious altercation in which the informant (Dotson) allegedly threatened the *71 defendant with a knife. The information available to the police officer was that the informant and the defendant were man and wife, that they had been quarreling over a period of three days, that at least one dangerous weapon — the knife — was involved, and that the defendant was ‘ ‘ sick ’ ’. The informant, presumably speaking from personal knowledge, said the defendant had a gun. (See People v. Taggart 20 N Y 2d 335, supra; People v. Arthurs, 24 N Y 2d 688, supra.)
It is necessary to emphasize that this is not a case where the informant is anonymous. (See People v. Johnson, 30 N Y 2d 929; People v. Bronk, 66 Misc 2d 932 [App. Term, 1st Dept.], affd. 31 N Y 2d 995.)[4] Knowing that he would be confronted by his paramour at the police station and that his information would be immediately verifiable, it should be abundantly clear that Dotson had little motive for fabrication. It should also be noted that under section 240.50 of the Penal Law, he was chargeable with falsely reporting an incident if his information was in fact false.
Having concluded that the stop was justified and considering the reason for the stop (report of a concealed weapon), we do not find the scope of the search constitutionally or statutorily impermissible. (People v. Taggart, 20 N Y 2d, at pp. 342-343; People v. Pugach, 15 N Y 2d 65 [weapon in closed briefcase].) Further, with the exigent circumstance of a weapon involved, we think it would be unreasonable to expect the police officer to have questioned the suspect preliminarily or to have engaged in a preparatory and perhaps dangerous, and almost certainly ineffectual, pat-down of the handbag. (People v. Mack, 26 N Y 2d, at pp. 317-318; People v. Taggart, 20 N Y 2d, at pp. 341-342.) Under the circumstances, we think the limited intrusion involved in searching the defendant’s handbag was reasonable. (See People v. Pugach, 15 N Y 2d 65, supra; cf. People v. Taggart, 20 N Y 2d 335, supra.)
*72 Then, too, we attach no significance to the fact that at the suppression hearing the arresting office^ did not articulate any feeling of fear for his own safety or for the safety of others at the time of the search. There was in this situation good cause for such fear and that alone may be sufficient in a proper case. (Brown v. State, 295 A. 2d 575 [Del.].) Moreover, the high incidence of willful homicide and aggravated assault and the attendant use of firearms in the context of lovers’ quarrels needs no elaboration here. (See, e.g., President’s Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, pp. 3, 39-40.)
Finally, we would merely add that concealed weapons present an immediate and real danger to the public. Although that danger would not warrant a routine weapons check, it should support an appropriate police response on less than a probability. (See Terry v. Ohio, 392 U. S., at pp. 31-32 [Harlan, J., concurring].) We think this was the case here.
Accordingly, the order of the Appellate Term should be affirmed.

. In searching the handbag, the officer acted pursuant to a directive requiring examination of all packages brought into the station house. This search, however, was prompted by the information Dotson furnished to the police. We sustain the search without regard to the directive and intimate no view as to the propriety under the Fourth Amendment of searches conducted pursuant to directives or regulations of this type.

. Concededly, this is not the classical “ stop ” and “ frisk ” case, but we think the rationale apposite.

. Under the statute, “criminal activity” means any felony, or any offense listed in section 552 of the Code of Criminal Procedure, and would include the unlicensed carrying of a loaded pistol or revolver. (Penal Law, § 265.05, subd. 2; § 265.20, subd. a, par. 3; § 400.00, subd. 2, par. [e]; see, also, People v. Rosemond, 26 N Y 2d 101, 103-104.)

. In People v. Taggart (20 N Y 2d, at p. 343), we explored the dangers inherent in using anonymous information as a basis for intrusive police action. We were careful to point out such police action should not extend to all contraband or criminal violations, but should be limited to circumstances “relating] to matters gravely affecting personal or public safety or irreparable harm to property of extraordinary value.” (See People v. Johnson, 30 1ST Y 2d 929, supra-, see, also, A.L.I. Model Code of Pre-Arraignment Procedure [Official Draft, No. 1, § 110.2, July, 1972].)