Jasen, J.
(dissenting). There can be little doubt that a police officer may stop a person in a public place when he reasonably suspects that the person is committing, is about to commit, or has committed a felony. In conjunction with the stop, the officer may, if he reasonably suspects that he is in danger of physical injury, search the suspect for any weapons or instru *76 mentalities capable of producing serious physical injury. (CPL 140.50, subd 3.)
The test to be applied when assessing the validity of a stop and frisk is whether "the facts available to the officer at the moment of the seizure * * * [would] 'warrant a man of reasonable caution in the belief that the action taken was appropriate”. (Terry v Ohio, 392 US 1, 21-22; People v Moore, 32 NY2d 67, 69, cert den 414 US 1011.) Put another way, the court must ascertain whether the initial stop was reasonable and whether the acts taken in consequence of the stop were appropriate responses to the situation. (People v Rosemond, 26 NY2d 101, 105.)
In this case the officer and his partner had been patrolling at night in a high crime area usually given "special attention” by police anticrime patrols. The two officers observed the defendant and two other men standing in the hallway. Upon approaching them, the officers observed one of the men holding a knife. On reaching the scene, the police did what good police work required, and that is to neutralize the weapon and undertake an orderly investigation of what they reasonably believed was in progress—a robbery. Thus, the police demanded that the man holding the knife drop his weapon. As the armed man complied with the police order, the defendant took several steps toward a doorway. One of the officers told him to stop and reached towards the defendant. Since accepted police practice required that all persons on the scene be detained for questioning, the officer could properly demand that the defendant stop. When the officer put out an arm as the defendant approached, he was applying the minimum amount of physical force necessary to effectuate his command. Accordingly, the initial stop of the defendant was reasonable.
At the time of this stop, the situation was entirely obscure. The officer could reasonably believe that an armed robbery was in progress. However, he did not yet know which of the men were victims and which were perpetrators. He did know, however, that one dangerous weapon was in the immediate vicinity on the floor of the hallway and could reasonably fear that other weapons, as yet concealed, were close at hand. When the officer reached toward the defendant to prevent him from leaving the scene, he touched a "hard object” in the defendant’s coat pocket. Was it not reasonable at that moment for the officer to believe that the "hard object” was another weapon? Certainly it was not necessary for him then to make *77 polite inquiries under such circumstances. The situation authorized a limited intrusion into the defendant’s pocket to discover the nature of the "hard object”. (People v Moore, 32 NY2d 67, 71, cert den 414 US 1011, supra; People v Mack, 26 NY2d 311, 317, cert den 400 US 960; see Adams v Williams, 407 US 143, 146.) This, of course, did not constitute a full-blown search. It was limited to the particular coat pocket. Only upon finding the "hard object” to be a blackjack did the officer conduct a full-body search, leading to the discovery of two special police shields unlawfully in the possession of the defendant. (Cf. Terry v Ohio, 392 US 1, 30, supra.)
Since I conclude that the actions of the police officer were reasonable under the circumstances, the motion to suppress was properly denied, and, accordingly, I would affirm the order of the Appellate Term.
Chief Judge Breitel and Judges Jones, Wachtler, Fuchs-berg and Cooke concur with Judge Gabrielli; Judge Jasen dissents and votes to affirm in a separate opinion.
Order reversed, etc.