Wachtler, J.
(dissenting). In my view, under the circumstances, the police responded to an emergency situation in an entirely reasonable manner and, therefore, suppression of the weapon and defendant’s statements cannot be justified on the ground that he was subjected to “custodial interrogation” in violation of his Miranda rights.
On September 11, 1980 at approximately '12:30 a.m. Officer Frank Kraft and his partner, Officer Sal Scarring, were on road patrol on 47th Avenue at Francis Lewis Boulevard, Queens, when a young woman approached and requested assistance. She stated that she had just been raped by a man she described as a black male, approximately six-feet tall wearing a black jacket with the name “Big Ben” in yellow letters on the back. She indicated that her assailant had entered the nearby A&P supermarket on Francis Lewis Boulevard, and that he had a gun.
The officers drove the woman to the supermarket where Kraft approached the front of the store on foot while Scarring radioed for assistance. Kraft then observed the defendant, who matched the description given by the *668 woman, approaching the checkout counter. Defendant then fled to the rear of the store with Kraft, who lost sight of the defendant for several seconds, in pursuit. Kraft told defendant to stop and put his hands over his head. Other officers who had arrived in the interim surrounded defendant while Kraft frisked him, discovering an empty shoulder holster.
Kraft handcuffed defendant’s hands behind his back and asked him where the gun was. The defendant looked in the direction of a stack of cartons and responded “the gun is over there”. The gun was not visible but Kraft reached into one of the cartons and retrieved a loaded revolver. He placed defendant under arrest and advised him of his Miranda rights. Kraft then asked defendant if he owned the revolver and received an affirmative reply. In response to another question posed by Kraft defendant indicated that he purchased the weapon in Miami, Florida.
Criminal Term suppressed the statement “the gun is over there” because defendant had not yet been informed of his Miranda rights, and also suppressed the revolver and postarrest statements as tainted evidence (Wong Sun v United States, 371 US 471). The Appellate Division affirmed, without opinion. In my view neither the letter nor the spirit of the Supreme Court’s decision in Miranda v Arizona (384 US 436) was violated under these circumstances, and, accordingly, I dissent and vote to reverse.
In Miranda v Arizona (supra, at p 471) the Supreme Court held that statements obtained as the result of a custodial interrogation of a defendant may not be used at trial absent some demonstration that procedural safeguards were employed to secure the defendant’s privilege against self incrimination. The court recently interpreted the meaning of the term “interrogation”, as used in this context, as including not only express questioning but also its functional equivalent, defined as “any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect” (Rhode Island v Innis, 446 US 291, 301).
Careful analysis of the Miranda and Innis decisions suggests that the court is primarily concerned with dis *669 couraging official conduct which, examined objectively, reveals an unmistakably deliberate attempt to elicit some incriminating response from the detainee as opposed to official conduct designed to achieve an articulable and legitimate noninvestigatory purpose. Neither the Supreme Court nor this court has ever ruled that a response to a question properly classifiable in the latter category should be suppressed as the product of a custodial “interrogation” in violation of Miranda’s admonition.
In People v Huffman (41 NY2d 29) we held, after determining that defendant was clearly in custody, that the question “[w]hat are you doing back here?” directed at a suspect discovered hiding in some shrubbery behind a store at 4:00 a.m. did not constitute “interrogation” within the meaning of Miranda. We determined that the question “was designed to clarify the nature of the situation confronted, rather than to coerce a statement * * * [the officers] had found themselves, quite inadvertently, in the middle of a possible criminal transaction and immediate clarification was necessary before taking drastic action” (41 NY2d, at p 34).
In People v Chestnut (51 NY2d 14) we addressed a factual situation remarkably similar to the instant case. An officer in pursuit of two robbery suspects, at least one of whom was believed armed, observed one pass a small object to the other. After the suspects were apprehended and, while they were lying on the ground with the officer’s revolver trained on them, the recipient of the object was asked “[w]here is the gun?” Citing Huffman, we specifically held that none of defendant’s Fifth Amendment rights were violated notwithstanding that no Miranda warnings were given before the question was posed. We expressed our “opinion that this single question did not constitute custodial interrogation, and, thus, the response given by defendant — ‘It’s right here’ — need not be suppressed even though defendant was not informed of his constitutional rights before answering” (51 NY2d, at p 23, n 8 [citation omitted]). Since there could be no doubt, after Huffman, that defendant was in custody (although not under arrest) the clear import of our holding was that the question was *670 not, under the circumstances, the equivalent of “interrogation” within the meaning of Miranda.
Although the officer in Chestnut indicated that he believed himself to be in physical danger when he asked the suspect for the weapon, the factual finding by the courts below in this case that the officer’s safety was never in question does not require a contrary result. Initially, it is worth noting that nothing in our opinion in Chestnut either explicitly or implicitly suggested that our determination that the question was not prescribed by Miranda (as opposed to our holding that the question was not an improper stop and frisk under the Fourth Amendment) was based on the officer’s perceived threat of physical danger.
More significantly, the danger posed to the general public in this case due to the officers’ inability to locate a loaded weapon — a threat which many would perceive to be even more insidious than the threat to the officer’s life in Chestnut — certainly provides a sufficiently compelling noninvestigatory purpose for questioning defendant about the gun’s location without first warning defendant of his Miranda rights.[1] Approaching the situation with foresight, as Officer Kraft would have, it is evident that the loaded weapon here could have been passed to a cohort, an accomplice bent on securing the freedom of his captured ally, or, worse yet, dropped on the street outside the supermarket to become the weapon of an innocent child, a mentally unstable adult, or anyone else who might decide to use it. Faced with an obvious emergency requiring an immediate response, Officer Kraft, like the officer in Huffman, acted reasonably and, in my view, properly in questioning defendant in a limited manner “designed to clarify the nature of the situation confronted” (41 NY2d, at p 34).[2]
*671 To require a police officer to provide Miranda warnings before asking about the location of a weapon under the circumstances of this case would only unnecessarily enhance the potential for death or severe injury. Far from revealing a deliberate design on the part of the officer to elicit an incriminating statement from defendant, the record before us portrays a prudent measure undertaken to neutralize the very real threat of possible physical harm which could result from a weapon being at large.[3] Nothing could be more appropriate here than our observant understatement in Huffman (supra, at p 34) that “[t]his was no time for preinterrogation warnings, or the tender of legal representation”.
Miranda was never intended to enable a criminal defendant to thwart official attempts to protect the general public against an imminent, immediate and grave risk of serious physical harm reasonably perceived. Any result which discourages the police from pursuing this type of precautionary measure by requiring Miranda warnings beforehand, at the risk of losing the use of all evidence derived thereafter, is contrary to reason and binding precedent.
Accordingly, I respectfully dissent and vote to reverse.
Chief Judge Cooke and Judges Jones, Fuchsberg and Meyer concur; Judge Wachtler dissents and votes to reverse in an opinion in which Judges Jasen and Gabrielli concur.
Order affirmed in a memorandum.

. In an analogous factual context, the Fifth Circuit Court of Appeals, sitting en banc, expressed a similar view: “We find ourselves unable to condemn, after the fact and on grounds of some delicacy, such mild prophylactic measures reasonably calculated to ensure the safety of the officers, the suspect, and others on the scene as well. To be sure, the court below concluded that the agents did not feel physically threatened by Castellana, but in our view the mild measures adopted were justified by a reasonable prudence under the circumstances and did not require an actual fear of imminent harm to validate them” (United States v Castellana, 500 F2d 325, 326-327 [n omitted]).

. Nor do we place any significance, as does the majority, in the fact that the police officer’s question was not found by the suppression court to have been prompted by the *671 officer’s concern for his personal safety or the safety of others. Indeed this is not an appropriate standard to measure the reasonableness of a police officer’s conduct in a situation such as this which was fraught with danger. This was our holding in People v Moore (32 NY2d 67, 72): “Then, too, we attach no significance to the fact that at the suppression hearing the arresting officer did not articulate any feeling of fear for his own safety or for the safety of others at the time of the search”.

. In view of the validity of the first question asked of defendant regarding the location of the gun and the admissibility of his answer, there is no longer a predicate to suppress the revolver. Seizure of the weapon violated no Fourth Amendment right of the accused. Likewise, all of defendant’s postarrest statements are properly admissible, for the questions which elicited those responses were prefaced by the administration of proper Miranda warnings.