Francisco HALL, Plaintiff,

v.

CITY OF WHITE PLAINS, City of White Plains Department of Public Safety, Simon Property Management a/k/a Fashion Mall Partners, Williams–Sonoma, Victoria's Secret Stores, P.O. Douglas, P.O. Solomon, I.PC. International Corp., Defendants.

No. 00 CIV. 6958(CM).

United States District Court, S.D. New York.

Jan. 25, 2002.

Leonard Buddington, Esq., White Plains, NY, for Plaintiff.

Joseph A. Maria, Esq., White Plains, NY, Eric S. Strober, Esq., New York City, Mitchell Teitelbaum, Esq., Mineola, NY, Craig L. Roberts, Esq., New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiff Francisco Hall sues defendants City of White Plains, the City of White Plains Department of Public Safety ("WPDPS"), Simon Property Management ("Simon"), Williams–Sonoma, White Plains Police Officers Douglas and Solomon, Victoria's Secret Stores ("Victoria's Secret") and I.P.C. International Corporation ("IPC") for violation of his federal constitutional rights under 42 U.S.C. § 1983, and for state law claims of false arrest, negligence and prima facie tort, for an incident in which he was briefly detained as a shoplifting suspect in a shopping mall. Defendants City of White Plains, WPDPS, Officers Douglas and Solomon move for summary judgment and, in the event they

are found liable, cross-claim against the other defendants. Victoria's Secret, Simon and IPC also move for summary judgment.

Summary judgment as to defendants the City of White Plains and WPDPS is granted. Summary judgment on the claims of negligence as against Simon, Victoria's Secret and IPC is granted. Williams Sonoma was not named in the Amended Complaint and is therefore dismissed. Summary judgment on the claims for false arrest and imprisonment under Section 1983 against Officers Douglas and Solomon is denied.

## STATEMENT OF FACTS

The following facts are construed in the light most favorable to the non-moving party—in this case, the plaintiff.

On or about June 19, 1999, plaintiff was shopping with his fiancé at the Westchester Mall in White Plains, New York. They arrived at approximately 4:00 P.M. and proceeded to make a purchase at Williams–Sonoma. The purchase was placed in two Williams–Sonoma bags, one inside the other. Plaintiff was carrying the Williams–Sonoma bag when he and his fiancé went on to Victoria's Secret.

Plaintiff left his fiancé in Victoria's Secret to go to another store. At some point after plaintiff left Victoria's Secret, he was approached by two uniformed City of White Plains Police Officers. According to plaintiff, Officer Solomon asked: "What is in the bag?" Plaintiff explained that the bag contained purchases made by his fiancé at Williams–Sonoma. Solomon then asked him why it was "double-bagged," to which plaintiff responded: "Why don't you ask Williams–Sonoma?"

Officer Solomon directed plaintiff to accompany them to Williams–Sonoma. Plaintiff asked if he could stay where he

was standing while the officers went to Williams–Sonoma, but the officers told him that they should all go to Williams–Sonoma together. Plaintiff, in his deposition testimony, described his encounter with the police in this way:

> "He asked me did I have ID. I said, 'Yes.' At that point he asked me, 'What's in the bag? What did you actually buy?' I advised him I'm not sure, that I didn't make the purchase. I told him my fiancé made the purchase. He then asked me to search the bag. I said, 'No.' He then asked me again, 'What are you hiding between the bags?' I replied, 'Nothing.' He then asked me, 'Why is the bag doubled?' I said, 'I'm not sure. That's something you would have to ask the clerk who doubled it,' and then he asked—then he said, 'Let's walk down to the clerk.' 'Williams–Sonoma' actually he said. And I said, 'I'll wait here. You can go ask if you want.' And he then said, 'No, let's all go down.' I'm sorry. I—also, the last time that I answered, actually said no to him, he then approached me and that's when he said that he has enough to arrest me, actually, and not to give him a hard time. He took a step towards me."

(Hall Dep. at 26.)

Upon reaching Williams–Sonoma, plaintiff asked the officers if he could leave to look for his fiancé, and the officers again directed him not to leave. Officer Douglas and five mall security guards waited with plaintiff in front of Williams–Sonoma while Officer Solomon went inside to investigate. After several minutes, Solomon exited the store and stated: "It's not him." The defendant officers did not explain to plaintiff the basis of their investigation, nor did they apologize for inconveniencing him.

Plaintiff took down the defendant police officers' badge numbers.

Plaintiff alleges that he was detained because a Victoria's Secret employee called mall security in reference to a "suspicious looking black male" carrying a "booster bag."[1] Mall security guards then called the City of White Plains Police Department.

Officer Solomon's recollection of the incident largely corresponds with plaintiff's account. *See* Police Report of Incident, Exh. E, Def. Exhibits to Summary Judgment Motion by City of White Plains. Officer Solomon wrote in his incident report that he and Officer Douglas responded to a call from the Westchester Mall. Upon arrival at the mall, the officers were "met by Security who stated that an employee/manager from Victoria's Secret called them and said they were observing a black male with three black females in their store." *See* Solomon Aff., p. 2. Officer Solomon recalled "The male was carrying a 'booster bag' and it was Security's opinion that they looked suspicious. When we arrived at the Victoria's Secret Store, the male in question walked from the second floor to the third floor." *Id.* At that time, Officers Solomon and Douglas approached Hall and asked him why his shopping bag was doubled up. Officer Solomon recalled that Hall "pulled the bag close to himself and asked if I was asking to search him." *Id.* Officer Solomon replied "that he was not requesting to search him, but did want to know why the bag was doubled up." *Id.* Officer Solomon stated that Hall became "agitated," and a crowd was starting to gather. *Id.* Officer Solomon advised Hall to calm down or he would be arrested. *Id.*

---

**1.** A "booster bag" is a bag rigged or lined to help a shoplifter avoid detection when leaving a store.

Officer Solomon wrote that he asked Hall for the third time why the bag was doubled, and Hall replied, "Why don't you ask Williams–Sonoma?" *Id.* According to Officer Solomon, he replied "we will, let's go." *Id.* Hall said that he would wait where he was. *Id.* In response, Officer Solomon said that they should all go together. *Id.* At this point, Officer Solomon stated that Hall walked toward Williams–Sonoma, and he, Officer Douglas and the mall security guards followed him. *Id.* As they all walked to Williams–Sonoma, Officer Solomon stated that Hall said he was with only one woman who was somewhere in the mall, not three women. *Id.* Officer Solomon spoke with a Williams–Sonoma clerk who corroborated Hall's Williams–Sonoma purchase. Officer Solomon then advised Hall that his story checked out, he asked Hall for his identification so that he could fill out his report and then thanked him. *Id.* at 3.

Plaintiff alleges that defendants Solomon and Douglas falsely arrested and imprisoned him in violation of his Fourth, Fifth and Fourteenth Amendment rights under the U.S. Constitution (First Cause of Action); that the City of White Plains had a policy and custom of failing to train defendant police officers in the proper methodologies of arrest, detention and interrogation, as they relate to racial and ethnic minorities (Second Cause of Action); that defendant police officers falsely arrested him in violation of New York State law (Third Cause of Action); that defendants and their security personnel were negligent in training, hiring and supervising police officers, security guards, and employees (Fourth Cause of Action); and that defendants committed a prima facie tort by taking actions with the deliberate intent to injure plaintiff (Fifth Cause of Action).

Defendants City of White Plains, WPDPS, Officers Douglas and Solomon move for summary judgment and cross-claim against the other defendants, alleging that if plaintiff is successful in proving liability against them, then the other co-defendants will be liable to them for the amount caused by their relative responsibility in the incident. Victoria's Secret, Simon and IPC also move for summary judgment.

For the reasons stated below, summary judgment is granted on all claims against the City of White Plains and WPDPS. Summary judgment is granted for the claims of negligence against Simon, Victoria's Secret and IPC. Summary judgment is denied as to the claims against Officers Douglas and Solomon.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When opposing a motion for summary judgment, it is not sufficient for the non-moving party to present evidence that is conclusory or

speculative, with no basis in fact. *See Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505.

### A. Section 1983 Claims

#### 1. *Police Officers Douglas and Solomon*

■ Plaintiff asserts both federal and state false arrest and imprisonment causes of action against defendant police officers Douglas and Solomon. Such claims brought under § 1983 are guided by the tort law of the forum state. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995). A claim for false arrest, premised on the Fourth Amendment right to be free from unreasonable seizures, is "substantially the same" as a false arrest claim under New York law. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). To state a claim for false arrest, a plaintiff must show that: (1) the defendants intentionally confined the plaintiff; (2) the plaintiff was aware of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not justified or privileged. *See Broughton v. State,* 37 N.Y.2d 451, 456–57, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975); *see also Posr v. Doherty,* 944 F.2d 91, 97 (2d Cir.1991).

The first three factors of Hall's false arrest claim are met here. The officers intentionally confined Hall by making him accompany them to Williams–Sonoma and by forcing him to wait outside the store surrounded by one police officer and several mall security guards. Hall was very much aware of the confinement, and did not consent to the confinement, because he asked to remain where he was standing when originally approached, and then asked to leave Williams–Sonoma to find his fiancé. He was refused permission both times. The only remaining issue is whether the confinement was justified or privileged. *Id.*

#### a. *De Bour Levels*

■ The applicable legal standard in New York for judging the propriety of police conduct in street confrontations with private citizens is set forth in *People v. De Bour,* 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976), and reaffirmed in *People v. Hollman,* 79 N.Y.2d 181, 581 N.Y.S.2d 619, 590 N.E.2d 204 (1992). *De Bour* delineated four levels of permissible police intrusion, the propriety of each depending upon the circumstances presented. The court noted that various levels of permissible police intrusion must be "reasonably related in scope to the circumstances which rendered its initiation permissible." *Id.* If the officers' conduct in this case falls into one of the four levels of permissible police intrusion, plaintiff's confinement was justified.

The first *De Bour* level authorizes a police officer to approach a citizen to request information where there is "some objective credible reason not necessarily indicative of criminality." *Id.* at 223, 386 N.Y.S.2d 375, 352 N.E.2d 562. The questioning should be brief and specific, relating, for example, to an inquiry as to the person's identity, destination or reason for being in the area. *See Hollman,* 79 N.Y.2d at 191, 581 N.Y.S.2d 619, 590 N.E.2d 204.

However, once the officer's questioning becomes accusatory and the inquiry focuses upon the possibility of criminality, the stop passes beyond a mere request for information and to the second level, the common-law right to inquire. This level, which goes beyond a simple request for information, "is activated by a founded suspicion that criminal activity is afoot." *De Bour,* 40 N.Y.2d at 223, 386 N.Y.S.2d 375, 352 N.E.2d 562. The questioning may be invasive and of an accusatory type, which would lead a person to reasonably

believe that he is the focus of an investigation. *Hollman*, 79 N.Y.2d at 191–92, 581 N.Y.S.2d 619, 590 N.E.2d 204. Under this level, the officer may interfere with a citizen to the extent necessary to gain explanatory information, but may not make a forcible seizure.

The third level permits an officer to forcibly stop and detain a person for questioning where the police officer has reasonable suspicion that a suspect has committed, is committing, or is about to commit a crime. Reasonable suspicion has been defined as that "quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand." *People v. Cantor*, 36 N.Y.2d 106, 112–113, 365 N.Y.S.2d 509, 324 N.E.2d 872 (1975). The right to stop is a limited seizure and permits a significant interruption of a person's liberty of movement. *Id.* "To justify such an intrusion, the police officer must indicate specific and articulate facts which, along with any logical deductions, reasonably prompted that intrusion. Vague or unparticularized hunches will not suffice." *Id.* at 113, 365 N.Y.S.2d 509, 324 N.E.2d 872 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

The fourth and final level authorizes a police officer to arrest and take one into custody where the officer has probable cause to believe that the person has committed a crime or an offense in his presence. *Id.*; N.Y.Crim. Proc. Law § 140.10.

Any determination of the permissible level of police intrusion necessitates a searching examination of the facts and circumstances surrounding the encounter. The New York Court of Appeals consistently has held that the proper analysis for such cases is (1) to determine what police action or intrusion has occurred during an encounter—specifically, if the encounter is a mere "stop" to "inquire," as opposed to the substantially greater intrusion of a forcible "seizure" to temporarily detain and question; and (2) to determine the reasonableness of such police conduct. *See People v. Prochilo*, 41 N.Y.2d 759, 395 N.Y.S.2d 635, 363 N.E.2d 1380 (1977). The "index by which we define whether an encounter is a mere stop or a forcible seizure is the aggressiveness of the police conduct," *People v. Figueroa*, 58 A.D.2d 655, 656, 396 N.Y.S.2d 63 (1977) (police emerging, guns drawn, stating "Police, don't move" constituted a forcible seizure that bespoke a violent and forcible apprehension), and the degree to which the individual's physical liberty of movement is constrained. *People v. Jennings*, 45 N.Y.2d 998, 413 N.Y.S.2d 117, 385 N.E.2d 1045 (1978) (holding that police action in blocking defendant's vehicle with their own in order to investigate innocuous activity, significantly interrupted defendant's liberty of movement, and constituted an unconstitutional seizure); *People v. Ross*, 67 A.D.2d 955, 413 N.Y.S.2d 222 (2d Dep't 1979) (holding that by physically grabbing the defendant, the police engaged in a forcible seizure of his person, and failed to have the requisite quantum of knowledge necessary to justify the intrusion.).

Since Hall was forcibly confined by the officers, and was forced to accompany them to a different location, and questioned as to the contents of his bag, he was "detained" and the officers' conduct must be analyzed as a Level 3 *De Bour* intrusion. As such, the inquiry as to whether Hall's detainment was constitutional requires a determination of whether the officers had reasonable suspicion that Hall had committed, was committing or was about to commit a crime. *Cantor*, 36 N.Y.2d at 112–13, 365 N.Y.S.2d 509, 324 N.E.2d 872.

b. *Reasonable Suspicion to Detain Plaintiff*

■ Under De Bour, a Level 3 stop must be supported by "reasonable suspi-

cion"—that "quantum of knowledge sufficient to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand." *Id.* I have searched the record, and the following undisputed facts form the basis for Officers Douglas and Solomon to be suspicious of Hall: The security guards at the Westchester Mall called the White Plains Police. (Def. Local 3(g) Statement). Officers Solomon and Douglas were the responding officers. They met with the guards, who told them that an employee or manager of Victoria's Secret had called them to advise them that there was one black male and three black females looking "suspiciously" and that the male was carrying a "booster bag." (*Id.*) Mall security already had defendant under observation because he was a black male seen exiting Victoria's Secret, and he had a double bag (which presumably resembles a "booster bag") in his possession. The officers had no other information when they first approached plaintiff.

 Whether a particular fact situation justifies an investigatory stop is determined on a case by case basis. Officers are permitted to forcibly stop and detain a person for questioning where the officer has reasonable suspicion that a suspect has committed, is committing, or is about to commit a crime. *People v. Cantor*, 36 N.Y.2d 106, 112–113, 365 N.Y.S.2d 509, 324 N.E.2d 872 (1975). Reasonable suspicion involves a mixed question of fact and law. *People v. Hicks*, 68 N.Y.2d 234, 508 N.Y.S.2d 163, 500 N.E.2d 861 (1986). It is settled law that a police officer may rely on information provided by a known third party in order to establish a reasonable

suspicion that could justify an investigatory stop. *See Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *People v. Moore*, 32 N.Y.2d 67, 76 n. 3, 343 N.Y.S.2d 107, 295 N.E.2d 780 (1973) ("Reasonable suspicion prerequisite to a stop and frisk need not arise from the officer's personal observations, but when he acts on an informant's tip, there must be some 'indicia of reliability' to justify the officer's reliance on this information.") (citing *Adams*). However, whether the information provided to the officers, along with their own observations, provided an "indicia of reliability" sufficient to detain plaintiff is unclear.

The reliability of the information given by the mall security officers, and the reasonableness of the officers' reliance on this information can not be determined on this record. Moreover, when the officers stopped Hall, he was not accompanied by three females and was carrying a bag labeled "Williams–Sonoma." Mall security had been told to look for a black man with three female companions; and there is no indication that security was told that the "booster bag" had a Williams–Sonoma legend on it. Dozens of Williams–Sonoma customers were doubtless in the mall carrying legended bags. Summary judgment as to Officers Douglas and Solomon is denied.

### 2. *City of White Plains*

 Plaintiff alleges that the City of White Plains had a policy and custom of failing to train police officers in the proper methodologies of arrest, detention and interrogation as they relate to racial and ethnic minorities.[2]

---

**2.** Plaintiff officially added his *Monell* claim against the City of White Plains in the Amended Complaint. [Amended Compl. at ¶¶ 19–21.] However, the City anticipated that the only possible claim against it was a *Monell*

claim, and argued the absence of *Monell* liability in its summary judgment papers on the original complaint, and plaintiff responded to these arguments.

In order to succeed in an action against a municipality under Section 1983, plaintiff must establish a municipal policy, custom, or practice which allegedly deprived plaintiff of his civil rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). One example of a municipal custom or policy that is not itself unconstitutional, but which through its application may still serve as a basis for liability under Section 1983, is the failure to train police officers. The Supreme Court has recognized that the inadequacy of police training may constitute Section 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

The presence of deliberate indifference in a failure to train case hinges on (i) whether the training program is adequate, (ii) whether the alleged inadequate training can justifiably be said to represent "city policy," and (iii) whether there is a close causal connection between the alleged failure to train and violation of constitutional rights. *See Harris*, 489 U.S. at 390, 109 S.Ct. 1197. As the Supreme Court has explained, "it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390, 109 S.Ct. 1197. In such a case, the failure to provide proper training may represent a policy for which the city is responsible, and may be held liable if the application of the practice causes injury. *See id.*

In *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Court considered whether evidence of a single incident of use of excessive force by the police could, without more, establish a municipal policy of failing to properly train and supervise police officers. The Court concluded that to allow evidence of a single incident to establish inadequate training, without any proof relating to the nature of the training itself, would "unduly threaten [a municipality's] immunity from respondeat superior liability." *Id.* at 830, 105 S.Ct. 2427. Instead, to establish inadequate training, plaintiffs must put forward some evidence that the City itself has acted or consciously not acted. *Id.* at 832, 105 S.Ct. 2427.

In the case at bar, plaintiff has identified a single incident that caused an alleged constitutional deprivation. He contends that Officers Douglas and Solomon deprived him of his liberties, and subjected him to an illegal seizure under the Fourteenth and Fourth Amendments to the U.S. Constitution. Even if the detention did rise to a constitutional violation, this single incident is insufficient to establish a policy, custom or practice on the part of the Department of Public Safety which would make such an action attributable to the City of White Plains under *Monell.* Plaintiff has not proffered any evidence on the nature of the training offered by the White Plains Police Department, and under *Tuttle*, a single incident does not give rise to the inference that training was insufficient.

Because plaintiff has failed to adduce any evidence of "deliberate indifference to constitutional rights" so as to hold the City liable under a theory of failure to train, defendant City of White Plains' motion for summary judgment is granted.

### 3. *City of White Plains Department of Public Safety*

The WPDPS has moved for summary judgment on the grounds that a suit

against it—as an administrative arm of the City of White Plains—is redundant. Defendant WPDPS is correct.

■■■■ The WPDPS is an administrative arm of the City of White Plains, and therefore, the action must be dismissed against it. Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued. *See Fanelli v. Town of Harrison*, 46 F.Supp.2d 254 (S.D.N.Y.1999); *Baker v. Willett*, 42 F.Supp.2d 192, 197 (N.D.N.Y.1999) ("A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity"); *Manning v. County of Westchester*, 93–Civ–3366, 1995 WL 12579 at *2 (S.D.N.Y. Jan. 5, 1995) (removing the Westchester County Police Department as a named defendant where the County of Westchester, as the real party in interest, was already a named defendant); *Wilson v. City of New York*, 800 F.Supp. 1098, 1101 (E.D.N.Y.1992) (dismissing claim against New York City Police Department because the City of New York was the proper party in interest).

Because plaintiff has named the City of White Plains as a defendant, any claims against the WPDPS are redundant. WPDPS does not have its own legal identity, and therefore the claims against it are dismissed.

B. Negligence and Prima Facie Tort Claims Against the Remaining Defendants

Plaintiff next alleges that the remaining defendants, Victoria's Secret, Simon and IPC[3], were negligent in their failure to hire, train or supervise its employees to "prevent the type of negligent, careless, insensitive, and unlawful conduct complained of in this action." (Amended Compl. at ¶ 26.) Plaintiff also claims that defendants lacked reasonable suspicion or probable cause to seize plaintiff, and acted with deliberate intent to injure plaintiff, which constituted a prima facie tort. (Amended Compl. at ¶ 29–31.)

1. *Negligence Claim*

■■■■ Plaintiff fails to state a claim for negligence in hiring or training as a result of Victoria's Secret's decision to call the mall security. In order to state a claim for negligence, a plaintiff must allege that defendant owed plaintiff a cognizable duty of care, that the defendant breached that duty, and that the plaintiff was injured as a proximate result of the breach. *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 945 F.Supp. 693 (S.D.N.Y.1996); *Donohue v. Copiague Union Free School Dist.*, 64 A.D.2d 29, 32, 407 N.Y.S.2d 874, 877 (2d Dep't 1978), *aff'd*, 47 N.Y.2d 440, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979). Plaintiff's general negligence cause of action must be dismissed because defendant Victoria's Secret owed no duty to Francisco Hall under the circumstances of this case. *See Moore v. First Federal Savings and Loan Assoc. of Rochester*, 237 A.D.2d 956, 654 N.Y.S.2d 900 (4th Dep't 1997). (finding no duty in a factually-analogous case, discussed below). In addition, plaintiffs' conclusory allegations fail to state a valid cause of action for negligent training and supervision. *See id.* (citing *Richardson v. New York Univ.*, 202 A.D.2d 295, 296–97, 609 N.Y.S.2d 180 (1st Dep't 1994))

In *Moore*, 237 A.D.2d at 958, 654 N.Y.S.2d 900—a case very similar to the one at bar—plaintiff, a black male, was

---

**3.** As noted above, Williams Sonoma has been dropped from the Amended Complaint. The claims originally asserted against it are, therefore, dismissed.

approached by police with guns drawn when he exited a bank that he frequently had used for fifteen years. Plaintiff was talking with a personal banking specialist, when an employee of the bank observed a brown object in plaintiff's pocket, and thought it was a gun. *Id.* An assistant manager walked past the desk where plaintiff sat, but could not see what the object was because plaintiff's hands were in the way. The assistant manager called the security office at the bank's main branch for direction, and was instructed to walk past the desk area again. *Id.* After doing so, the assistant manager reported to the security office that she still could not see whether the object was a gun—and an employee of the security office directed her to call 911. When plaintiff left the bank, he was frisked with a gun in his back. The officers recovered a hair brush. *Id.*

Plaintiff sued the bank for negligence in exposing plaintiff to unwarranted peril by erroneously calling the police; failing to act reasonably in ascertaining whether he possessed a gun, and if so, whether he had a license; failing to notify the police that plaintiff was a customer of the bank and that he had not engaged in any suspicious activity; failing to provide adequate training of bank employees concerning emergency calls to the police for suspicious behavior; and hiring and retaining an assistant manager without ascertaining whether she possessed biased or prejudicial opinions concerning African American males. *Id.* Without further explanation, the Appellate Division concluded that the bank owed no duty to the plaintiff under those circumstances, and that the conclusory allegations failed to state a cause of action for negligent supervision and training. *Id.* at 957, 654 N.Y.S.2d 900.

Following *Moore,* this Court concludes that Victoria's Secret owed plaintiff no duty. Its employees saw what they thought was a bag commonly used to facilitate shoplifting. In response, they phoned mall security. This is analogous to what the defendant did in *Moore,* and which the court found to be insufficient to conclude that defendant owed plaintiff any duty.

The allegations of failure to train and failure to hire against Victoria's Secret, Simon and IPC are too conclusory to survive. As in *Moore,* there is nothing, beyond the bare allegations set forth in the amended complaint, to suggest that Simon and IPC failed to train its employees in any way. The mall security guards kept their eyes on the plaintiff until the City of White Plains Police Officers arrived to investigate. Not only are there nothing more than conclusory allegations in the complaint, the behavior by mall security was reasonable under the circumstances. Plaintiff has failed to set forth any facts which would raise a triable issue of fact as to this cause of action. Accordingly, the negligence claim is dismissed.

### 2. *Prima Facie Tort*

Plaintiff's claim of prima facie tort, which was added in the Amended Complaint, is dismissed *sua sponte.* This claim is clearly legally insufficient, and will be dismissed *sua sponte* on the pleadings.

Prima facie tort is a disfavored claim under New York law. Four elements must be alleged and proved to support a claim of prima facie tort: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful. *See Curiano v. Suozzi,* 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324 (1984); *Ross v. Mitsui Fudosan, Inc.,* 2 F.Supp.2d 522, 531 (S.D.N.Y.1998). The first element requires "disinterested malevolence," which means that "the plaintiff cannot recover

unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Lab., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 571 (2d Cir.1990) (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459 (1983)). An "essential element of [prima facie tort] is the allegation of special damages, fully and accurately stated with sufficient particularity as to identify and causally relate the actual losses to the allegedly tortious acts." *Broadway & 67th St. Corp. v. City of New York*, 100 A.D.2d 478, 486, 100 A.D.2d 478, 475 N.Y.S.2d 1, 6 (1st Dep't 1984). "Nonspecific conclusory allegations" do not meet the pleading requirement, nor do "round figures or a general allegation of a dollar amount." *Matherson v. Marchello*, 100 A.D.2d 233, 235, 473 N.Y.S.2d 998, 1001 (2d Dep't 1984) (citation omitted).

There is no evidence in the record that would lead a reasonable jury to conclude that the actions taken by Victoria's Secret, IPC or Simon were done solely with the intent to harm plaintiff. *Curiano*, 63 N.Y.2d at 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324. Victoria's Secret employees saw what they thought was a potential shoplifter. They called mall security, which investigated and assisted in identifying plaintiff to the police. The cashier at Williams–Sonoma confirmed that he had made a purchase there, and the incident immediately was over. Moreover, there is no legally sufficient allegation of special damages in the amended complaint, only non-specific conclusory allegations that do not causally relate any actual losses to the allegedly tortious conduct.

## CONCLUSION

For the reasons set forth above, the case is dismissed as to the City of White Plains, WPDPS, Victoria's Secret, Williams Sono-

ma, Simon and IPC. Summary judgment as to the claims against Officers Douglas and Solomon is denied.

This constitutes the decision and order of this Court.